GEORGE MORGAN *against* EDWARD MORGAN.

MOTION for a new trial.

This was an action of *disseisin*, for one undivided third part of a parcel of land in *Waterford*.

The defendant pleaded the general issue ; which, by agreement of the parties, was closed to the court. The issue was found for the plaintiff.

The plaintiff claimed title to the demanded premises, as devisee, under the last will and testament of his father, *John Morgan*, deceased ; who, in 1764, by his will duly executed, and which was proved and approved according to law, after making provision for his wife, devised his real estate to his four sons, in manner following, *viz.* " *Item.* I give unto my son *Edward*, the north side of my farm, running," &c. " *Item.* I give unto my two sons *John* and *Isaac*, all the south side of my farm, in equal proportion between them. *Item.* I give to my son *George*, all my land lying in the outer division of common land ; all which land as described, I give to my said sons, to their heirs and assigns forever." The testator, after disposing of his farming utensils, &c. and granting a small legacy to one of his daughters, who had been was good, by way of executory devise.

Held, also, that by the words " die without children," is intended *a dying without children living at the death of the first devisee.*

*Nov. 1813.*

MORGAN
*v.*
MORGAN.

*A.* devised his real estate to his sons *B.,C., D.* and *E.,* "their heirs and assigns forever ;" and added a clause to his will, that in case either of his sons should "die without children, his brothers should have his part in equal proportion." *B.* was married, and had issue, a son, who died during the life of *B.—B.* died, and left no children living at the time of his death. Held, that the limitation over

previously married and provided for, made the following disposition, viz. " *Item.* I give to my daughters *Mary, Martha, Rebecca* and *Phebe*, all my house-hold goods, with the liberty to live in my chamber, so long as they shall live single ; which I give my said daughters in equal proportion. And further my will is, that all my stock, viz. horses, cattle, sheep and swine, with the improvement of all my land, shall be improved to bring up my said daughters and my son *Isaac :* And further my will is, that my son *Isaac* shall have my dwelling-house ; and that my son *John* have right to set upon one end, at the east end of said house ; and that said *John* cut timber on any of my land to build said house," &c. He then added the following clause, viz. " And also my will is, that if my sons should either of them die, without children, that his brothers shall have his part in equal proportion."

On the death of the testator, his son, *John Morgan* entered upon the land devised to him, which is the land in controversy, and continued in the possession until his death, a period of about forty years, claiming it as his own property. During this period, he built a house on the premises ; was married, and had one son, the lawful issue of such marriage, who lived to the age of thirty-five years ; but who died two years before the time of his father's death. *John Morgan,* the younger, at his death left no children then living. He died insolvent ; and the land in question, was, by order of probate, sold for the payment of his debts. *Edward Morgan,* the defendant, also a son of the testator, purchased the land on such sale, and claimed an absolute title by virtue of a deed from the administrator. The defendant, at the commencement of the suit, was in possession of the demanded premises.

The plaintiff founded his claim to the land in question, on the last clause of the will, limiting over the *part* of either of the sons of the testator, who should " die without children," to the surviving brothers.

The Superior Court decided, that on the death of *John Morgan,* the younger, the estate, by force of the will, vested in his surviving brothers, as tenants in common : Whereupon,

the defendant moved for a new trial; and the question of law arising upon the motion, was reserved for the consideration of the nine Judges.

*Goddard*, in support of the motion, contended, that the first words in the will, " I give to my sons, to their heirs and assigns forever," are technical ; and that on the death of the testator, the estate in question, became a fee simple in *John Morgan*, the devisee, by force of the will ; that if the plaintiff have any claim whatever to the estate, he must take by way of executory devise ; and that he could not so take, because the contingency limiting the estate, was too remote and indefinite, and tended to create a perpetuity.

He also, contended, that the last clause of the will, " die without children," was of the same legal import as the words " dying without issue ;" which, when applied to a freehold estate, as in this case, must be taken to mean an *indefinite failure of issue ;* that there were no other words used in the will, which, taken in connexion with the words " die without children," calculated to vary or control their legal import ; and that, therefore, the limitation, whatever might have been the intention of the testator, was void.

He also, further contended, that if the words " die without children," taken in connexion with the other parts of the will, should be construed not to intend an indefinite failure of issue, but were controlled by other words limiting the contingency to the time of the death of the first devisee, then the obvious intent of the testator, was, to limit the estate over in case either of his sons died, living the other brothers, *without having had children,* and not *without children living at the time of the death of the first devisee ;* and that on the birth of the son of *John,* the younger, the contingency on which the limitation rested, as to his part, utterly failed.

He cited *Goldwright* d. *Larmer* v. *Searle,* 2 *Wils.* 29. *Roe* v. *Jeffrey,* 7 *Term Rep.* 589. *Doe* d. *Barnfield* v. *Welton,* 2 *Bos. & Pul.* 324. *Doe* d. *Lyde* v. *Lyde,* 1 *Term Rep.* 593. *Holmes* v. *Williams,* 1 *Root's Rep.* 335.

*W. F. Brainard*, contra. He cited *Pells* v. *Brown, Cro. Jac.* 590. *Doe* d. *Lyde* v. *Lyde*, 1 *Term Rep.* 593. *Porter* v. *Bradley*, 3 *Term Rep.* 143. *Doe* d. *Sheers* v. *Jeffrey*, 7 *Term Rep.* 585. *Wilkinson* v. *South*, 7 *Term Rep.* 551. *Doe* d. *Barnfield* v. *Welton*, 2 *Bos.* & *Pul.* 324. *Fosdick* v. *Cornell*, 1 *Johns. Rep.* 440.

EDMOND, J. (After stating the case.) The decision of this case rests on a fair construction of the will, governed by the plain and obvious intent of the testator, collected from all parts of it in connexion ; unless the intent is opposed to some settled rule of law.

To my mind, the impression is irresistible, that the testator, after a disposition of his whole estate, and the provision for the payment of debts and funeral expences, as stated in the will, considering the disposition he had made, and what the state of things might be, in case either of his sons should die without children, in contemplation of such an event, added the clause, " and also my will is, that if my sons should either of them die without children, that his brothers shall have his part in equal proportion." This was done for the express purpose of providing for the future disposition of the lands before allotted to them, in case either of them should die without children living at the time of his death. I can find nothing in the will contrary to this intent ; and no principle of law, founded in reason, exists, which will support a different construction.

The words " die without children," admitting them to have the same legal import as " dying without issue," when standing alone, and not opposed to any other clause in a will, do not, necessarily, import an *indefinite failure of issue ;* or, indeed, any thing more than dying without children living at the time of the devisee's death. This is the true and natural import of the words.

Where the words " dying without issue," have relation to a bequest of chattels only, this construction will not be questioned. Where such words relate to the disposition of a freehold estate, a different rule of construction has, in some instances, obtained.

"Dying without issue" has been held, as applicable to a freehold estate, to mean an *indefinite failure of issue ;* and the reason of the distinction, is, said *Buller,* J., " that courts of law always lean in favour of the vesting of estates." *Doe* v. *Perryn,* 3 *Term Rep.* 494. How far this construction is warranted by reason and policy, in the country where it has been adopted, it is not necessary, in this case, to decide : Suffice it to say, that judges of the first respectability in *England,* can scarcely be reconciled to it. Lord *Kenyon,* in delivering his opinion in the case of *Porter* v. *Bradley,* 3 *Term Rep.* 146. noticing the opinion of Ld. *Mansfield* in *Forth* v. *Chapman,* 1 *P. Wms.* 663., said, " A great deal of argument is necessary to convince me, that in the case of realty, those words (*leaving no issue*) should be taken to mean an indefinite failure of issue. It would be strange if these words had a different meaning, when applied to real and personal property." He said also, " that the distinction is not founded in law."

If we consider, for a moment, the reasons usually assigned why the intent of the testator is to be favourably regarded, *viz.* that wills are so often made in *extremis,* by men unlettered, *inops concilii,* &c. it would be strange indeed to find a court avowedly governed by such reasons ; construing the words of an unlettered testator, in one case, where personal estate only is concerned, according to their natural, obvious and grammatical import, according to the common sense of mankind, and the plain intent of the testator, and in another case, where real estate is the subject of consideration, solemnly giving to the same words a construction directly opposed to the known and manifest intent of the testator, and such an one as would never have entered into the imagination of any man not an adept in the most abstruse and difficult branch of legal science ; as was the case of *Beauclerk* v. *Dormer,* 2 *Atk.* 308., where Ld. *Hardwicke* said, there was no doubt about the intention of the testator, but thought himself bound to make a decree contrary to that intention, and for no better reason expressed, than because the legal import of words, is different from the natural one. In such a case, is it too much to say,

VOL. V. Q q q

Nov 1813.

MORGAN
v.
MORGAN.

that a will so construed, is the will of the court, and not the will of the testator?

This manifest inconsistency has induced courts of justice to lay hold of the slightest circumstances, to support the intent of the testator, and deliver the words " heir" and " without issue" from the rigid rules of legal construction : As, where an estate is limited to a man and his *heirs* forever, and if he dies without having heirs, then to his brother, or any person who may be his heir. These words, it is said, shall not have their full legal operation, but shall be restrained to heirs of a particular description, *viz. heirs of the body. Porter* v. *Bradley,* 3 *Term Rep.* 143. So, as to these words, if " *A.* die leaving no issue behind him," much stress has been laid upon the words " *behind him,*" as importing, necessarily, that the testator meant, at the time of his death. So, also, as to these words, if he died " without issue living *William.*" *Pells* v. *Brown, Cro. Jac.* 590. So, in a devise to *A.* and *B.,* and upon the death of either, *without children,* to the survivor. *Hughes* v. *Sayer,* 1 *P. Wms.* 534. The words dying " without children" were held to intend " children living" at the death of the party, and not an indefinite failure of issue; because the immediate limitation over was to the surviving devisee. So, in the case of *Roe* v. *Jeffrey,* 7 *Term Rep.* 589., a devise to one and his heirs forever, but in case he should *depart this life and leave no issue,* then to two others, or the survivor, or survivors of them, to be equally divided betwixt them, and share alike; it was held, because the devise over was to persons then in existence, that the testator must have intended the devise over, *on failure of issue living at the death of the first taker ;* and that this was a good executory devise. This case was fully considered by the court, and compares with the case under consideration. The case of *Holmes* v. *Williams,* 1 *Root's Rep* 335. before the Supreme Court of Errors, where there was a devise of real estate, is to the same effect.

If, however, the words " die without children," standing alone, as applicable to real estate, might be construed to intend an indefinite failure of issue, such a construction would

Nov. 1813.

MORGAN
v.
MORGAN.

not, necessarily, be decisive of this case. Here are other words and provisions, which shew the intention of the testator, as plainly as in any of the cases cited, to confine the contingency on which the limitation rests, to lives then in being ; and which necessarily control the meaning and legal intent of the words " die without children." The time when the contingency contemplated, was to take effect, if ever, was on the death of one of the four brothers, and not at an indefinite period. This is apparent from the words of the disposition itself : " And also my will is, that if my sons should either of them die without children, *that his brothers shall have his part in equal proportion.*" Who, then, is to take on the happening of the contingency ; that is, on dying without children ? The words of the clause give the answer. " His brothers" shall have his part in equal portions : Brothers then in being, confining the operation of this disposition to the time of the death of one son, living the others, in direct opposition to the idea of waiting the event of an indefinite failure of issue. It follows, that the same unfettered and liberal rule applied in construing words respecting the disposition of personal estate, being applied to this case, must remove every shadow of doubt. And I am fully satisfied, that construing the will according to the plain and obvious intent of the testator, the contingency will be found neither too indefinite nor remote ; but must happen, if at all, during the lives of persons in being at the time of making the will, and that the limitation over, is, consequently, good.

As to the second point insisted on by the defendant, *viz.* that if the words " die without issue," do not intend an indefinite failure of issue, but are controlled by other words limiting the contingency to the death of the first taker, then, the obvious intention of the testator was, to limit the estate over, in case either of his sons died, living the others, without (having had) children, and not *without children living at the time of the first taker's decease ;* and that on the birth of *John's* son, the contingency on which the limitation vested, had utterly failed, as respected his part of the estate ; it appears to me, a forced construction, and I can find nothing in

the will to support it. In the mind of the testator, had he foreseen the event of the birth and death of a grand-son, without having had children before the death of his father, the same reason would have existed for designating the person or persons to succeed to the estate, as would be, on the death of either son without children living at the time of the son's death. Therefore, to adopt the construction contended for, would defeat an important provision, manifestly intended by the testator, by adding the last clause of the will, *viz.* the disposition of either son's part, in case of death without children then living. Without this last clause of the will, on the death of a son without children then living, his portion would not go, exclusively, to the surviving brothers, but to the heirs at law, and the sisters might come in for a share; and the same would be the case, although such son might have had children who died without issue before the father. In the one case, therefore, as well as in the other, it would be equally expedient and desirable to the testator, to limit the share of either son, on his decease without children then living, to the surviving brother; and looking at the plain import of the words used, and the intended object, I think there can be no doubt on this subject.

Finally, I am of opinion, that the plaintiff's title to the premises is good, by way of executory devise; that the contingency on which the limitation over rests, is not too indefinite and remote; that by the words used in the last clause of the will, is intended *a dying without children living at the death of the first taker;* and that on the death of *John,* his part vested in the surviving brothers as tenants in common.

I would not, therefore, advise a new trial.

MITCHELL, Ch. J., REEVE, TRUMBULL, SMITH, BRAINARD, BALDWIN and INGERSOLL, Js., concurred in this opinion.

SWIFT, J. The devise, in the present case, is, I give the land in question, to my sons and their heirs forever; but if either of them should die without children, then his brothers shall have his part in equal proportions. This is, in the first

instance, a devise in fee. The devise to the second devisee is not expressed to be to his heirs. In a deed, those words would constitute a life estate ; but as the intent of the devisor is to govern, in wills, and it being apparent, that he intended to give to the second devisee, as large an estate as to the first, the true construction is, that the surviving brothers should take an estate in fee.

The question is, what kind of estate is created in the devisees by this devise. It is a general rule, that in the construction of wills, the intent of the testator shall prevail, where it is consistent with the principles of law : That where there is a particular intent, and a general intent, the general intent shall control the construction. In this devise, though it would seem to be a particular intent of the devisor that the estate of a brother, at his death, without issue, should go to his surviving brother ; yet, it is manifest, that the children of the devisees, as well as the second devisees, were objects of the testator's bounty ; and that he intended to make provision for them : But if the first devisees be considered as taking a conditional fee simple, which would become absolute by his leaving children living at his death, then he could alienate the estate, and defraud his children and the second devisees, and deprive them of the provision intended for them by the testator. To guard against this, a principle has been adopted, that the words *heirs, issue* and *children,* have the same legal import ; and that a *dying without issue,* or *without leaving issue,* means an indefinite failure of issue, unless some expressions are used which limit it to the time of the death of the devisor ; that a devise to one and his heirs, and if he die without issue, or without leaving issue, then to another, is an estate tail in the first devisee, with contingent remainder over to the second : And that whenever an estate can take effect as a remainder, it shall never be construed to vest the estate by way of executory devise.

If, then, in the present case, the devise be considered as a devise to the sons of the devisor, and the heirs of their bodies begotten, and on failure of such heirs, of either of the sons, then to the others in fee, it will create an estate in fee tail,

in the brothers, and a contingent remainder to the survivors. This will carry into effect the general intent of the testator, in making provision for the children of his sons, as well as the second devisees. But if this devise be considered as a conditional fee in the sons, with an executed devise to the survivors, on the death of either without leaving issue, at the time of his death, then if the sons should leave issue, the estate would be absolute, and they could aliene to the exclusion of their children, and defeat the second devisees; which would frustrate the object of the devisor.

If, however, the particular intent of the devisor is to be regarded, and the dying without leaving issue is to be limited to the death of the first devisee, then the surviving sons may take a fee simple by way of executory devise : For, by the common law, an estate in fee cannot be created by deed, after an estate in fee is granted, or to commence *in futuro* ; yet, in the construction of wills, to carry into effect the intent of the testator, executory devises have been admitted ; by which an estate in fee may be created, to commence in future, or to take effect after a fee simple : But, as the law will not admit of perpetuities, the contingency must not be too remote, on which the executory devise is to take effect ; but must happen within a life or lives in being, and twenty-one years and a few months afterwards. So, if the devise contains expressions which limit the failure of issue to the death of the devisee, it creates an estate by executory devise : As, where the devise was to one in fee, and if he died without leaving issue behind him, then to another, the words " without leaving issue behind him," were considered as confining the dying without issue, to the death of the first devisee.

If, then, it be understood, that the devise in question, confines the dying without children to the death of the first devisee, then the sons take a conditional fee simple, and may be called second devisees, taking an estate by way of executory devise : So that, in this case, the plaintiff is entitled to a recovery

New trial not advised.