ABBOTT, (BANK OF THE UNITED STATES v.)

[See Bank of the United States v. Abbott, Case No. 906.]

ABBOTT, (CRUM v.)

[See Crum v. Abbott, Case No. 3,454.]

ABBOTT, (DAVIS v.)

[See Davis v. Abbott, Case No. 3,622.)]

## Case No. 11.

### ABBOTT v. ESSEX CO.

[2 Curt. 126;[1] 17 Law Rep. 607.]

Circuit Court, D. Massachusetts. Oct. Term, 1854.[2]

ESTATES—EXECUTORY DEVISE— FEE SIMPLE CONDITIONAL ESTATE TAIL — DEFINITE FAILURE OF ISSUE.

1. A devise, "if either of my sons, John and Jacob, should happen to die without any lawful heirs of their own, then the share of him who may first decease, shall accrue to the other survivor and his heirs;" *held* to provide for a definite failure of issue, and that each son took an estate in fee-simple conditional, and not an estate tail.

[See note at end of case.]

2. The rules by which an executory devise of a fee-simple conditional, and a devise of a fee-tail, are to be determined, examined.

[At law. Real action by James A. Abbott and Hannah K. Abbott, his wife, demandants, against the Essex Company, tenants, to recover a parcel of land.] Both parties claimed under the will of John Kittredge. The demandants claimed that the will of John Kittredge created estates tail in equal moieties in each of his two sons John and Jacob, with cross remainders in fee-simple. The tenants claimed under Jacob Kittredge, to whom in his lifetime his brother had conveyed all his title; and they maintained that each of the two sons took a fee-simple, and that by way of executory devise, the share of that son, who should first die without issue, was devised over to the other. The will was as follows:

"In the name of God, amen. I, John Kittredge, of Andover, in the county of Essex and province of the Massachusetts Bay, in New England, surgeon, being, through Divine goodness, favored with the due exercise of my understanding, have great cause, and accordingly I return thanks to Almighty God therefor; but being exercised with such bodily indisposition as gives me reason to think that my continuance in life is but short, I have, therefore, thought proper to discharge my mind of all worldly concerns, as far as

possible, to the end that I may spend the remainder of my days in preparation for futurity; for which purpose I make this my last will and testament, whereby I dispose of my worldly goods and estate as followeth, namely:—

"Imp's. I give to Sarah, my well-beloved wife, the one third of all my lands and buildings in Andover aforesaid, and the one third of all my household goods and furniture, to be for her use and improvement, so long as she remains my widow.

"Item. I give to my son, Benjamin Kittredge, of Tewksbury, in the county of Middlesex, the sum of twenty shillings, lawful money, and the reason I give him no more is, that I have given him his portion out of my estate some time before.

"Item. I give to my son, Thomas Kittredge, all the land I own lying in a place known by the name of Ox Common, in said Andover, which, with what I have given him, my said son Thomas, completes his full proportion of my estate.

"Item. I give to my two sons, namely, John and Jacob Kittredge, all my lands and buildings in Andover aforesaid (excepting the land I gave to my son Thomas aforesaid), which buildings consist of dwelling-houses, barns, corn-house, grist-mill, and cider-mill, all of every denomination; also, all my livestock of cattle, horses, sheep, and swine, and all my husbandry utensils of every denomination, and all my tools that may be useful for tending the mills aforesaid, and also all my bonds and notes of hand and book accounts, together with what money I may leave at my decease; and my wearing apparel, I give the same to my said sons, John and Jacob Kittredge, to be equally divided between them; and in consideration of what I have given my said sons John and Jacob Kittredge, the executor of this testament (hereinafter named) is hereby ordered to see that all my just debts and funeral charges, together with all the legacies in this will mentioned, be paid out of that part of my estate I have given to my two sons, John and Jacob Kittredge, to whom I give each one bed and bedding.

"Item. It is my will, that if either of my said sons, namely, John and Jacob Kittredge, should happen to die without any lawful heirs of their own, then the share of him who may first decease shall accrue to the other survivor and his heirs.

"Item. I give to my granddaughter, Molly White (daughter of Aaron White, of Medway, in the county of Suffolk), the sum of fourteen pounds five shillings and two pence, lawful money; and the reason I give her no more is, I gave my daughter (mother of the said Molly White) at her marriage, as much as would make her, the said grandchild, with what I have now bequeathed, equal to my other daughters, which sum is to be paid her at the age of twenty-one years; but if she should see fit to marry be-

[1][Reported by Hon. B. R. Curtis, Circuit Justice.]

[2][Affirmed by supreme court, 18 How. (59 U. S.) 202.]

fore she arrives to that age, the same to be paid her at her marriage.

"Item. I give to my granddaughter, Sarah Dwinnel, the sum of sixty pounds, lawful money, to be paid in the following manner, namely, twenty pounds to be paid her as soon as she arrives to the age of twenty-one years; but if she should see fit to marry before the age of twenty-one years, the same sum of twenty pounds to be paid her and the remainder to be paid in three years after she arrives to the age of twenty-one, with lawful interest for the same till paid; and I also order her, the said Sarah Dwinnel, to be maintained out of that part of my estate I give to my sons, John and Jacob Kittredge, until she arrives to the age of eighteen years.

"Item. I give to my daughter, Elizabeth Kittredge, the sum of fifty-three pounds, six shillings and eight pence, lawful money, of which sum thirteen pounds, six shillings and eight pence is to be paid her at my decease, and the remainder to be paid her in four years after, with lawful interest for the same till paid.

"Item. I give to my daughter, Hannah Kittredge, the sum of sixty pounds, lawful money, twenty pounds to be paid her when she arrives to the age of twenty-two years (except she should marry before she arrives to the age of twenty-two years), then the said twenty pounds to be paid her, and the remainder to be paid in three years after, with interest for the same till paid. I also give her my best bed and furniture.

"Item. I give to my daughter, Susanna Kittredge, the sum of sixty pounds, lawful money, twenty pounds to be paid her when she arrives to the age of eighteen years, and the remainder in five years after, with interest for the same till paid.

"Item. I give to my three daughters, namely, Elizabeth, Hannah, and Susanna Kittredge, the remainder of my household goods and furniture (excepting wet and dry cash), and also the one third which I gave Sarah, my aforesaid wife, or what of the same may remain at her decease or marriage; all of which is to be equally divided amongst them, my abovesaid daughters. I also give to them, my said daughters, the privilege of living in my house for so long as they shall live a single life, and the liberty of keeping a cow and one swine on the produce of my land I have given to my two sons, John and Jacob Kittredge.

"Item. It is my will, that if either of my daughters or granddaughters aforenamed should die and leave no lawful issue, then, what I have given to either of them, should be equally divided amongst my surviving daughters or their heirs.

"Item. I give to my said sons, John and Jacob Kittredge, my wet and dry cash, and also my pew in the North Meetinghouse in Andover, aforesaid, to be equally divided between them, they to allow my aforesaid

wife and daughters to sit in said pew as long as they live unmarried. And if there is any of my estate that I have not disposed of in this will, either real, personal, or mixed, of what name or nature soever, I give the same to my aforesaid sons John and Jacob Kittredge.

"Lastly. I do hereby constitute and appoint my aforesaid son, John Kittredge, the sole executor of this my last will and testament, allowing this and no other to be so.

"In witness whereof, I, the said John Kittredge, have hereunto set my hand and seal, this twentieth day of September, Anno Domini one thousand seven hundred and seventy-five, and the fifteenth year of His Majesty's reign.     John Kittredge."

It was admitted by the parties, that said testator died in the year 1775; that his will was duly proved August 5, 1776; that his two sons, John Kittredge and Jacob Kittredge, survived him; that said John Kittredge died in the year 1826, never having been married; that said Jacob Kittredge died in the lifetime of his brother John, on July 15, 1807, leaving the following children, namely, John Kittredge, his oldest child, who died without ever having had issue, on the tenth of January, 1823; Jacob Kittredge, his next oldest child, who died December 18, 1831, having had issue one child, who is the demandant, Hannah Kittredge Abbott; Thomas W. Kittredge, his next child, who is now alive; Hannah Kittredge, his next child, who died, intestate, on the 28th October, 1815, never having had issue; George W. Kittredge, his next child, who died July 4, 1836, intestate, having had issue one child, Jacob Kittredge, who is now alive, and William H. Kittredge, his last child, who died, intestate, on the 1st of October, 1849, never having had issue. The marriage of the demandants was also admitted, and that the surviving son of Jacob Kittredge, the devisee named in said will, and also his surviving grandchild, had before the commencement of the suit, released and conveyed to demandants all their interest and title in the demanded premises. [Judgment for defendant. Affirmed, by supreme court, 18 How. (59 U. S.) 202.]

Bartlett, for demandant.
C. G. Loring and Merwin, contra.

CURTIS, Circuit Justice. The question presented for the decision of the court is, whether John and Jacob Kittredge took estates tail under the will of their father, John Kittredge. The devise to them is in the following words:—

"I give to my sons, namely, John and Jacob Kittredge, all my lands and buildings in Andover aforesaid, (excepting the land I gave to my son Thomas aforesaid,) which buildings consist of dwellings, houses, barns, corn-house, grist-mill, and cider-mill, all of every denomination; also all my live-stock

of cattle, horses, sheep, and swine, and all my husbandry utensils of every denomination, and all my tools that may be useful for tending the mills aforesaid; and also all my bonds and notes of hand and book accounts, together with what money I may have at my decease, and my wearing apparel. I give the same to my said sons to be equally divided between them; and in consideration of what I have given my said sons, John and Jacob Kittredge, the executor of this testament (hereinafter named) is hereby ordered to see that all my just debts and funeral charges, together with all the legacies in this will mentioned, be paid out of that part of my estate I have given my two sons, John and Jacob Kittredge, to whom I give each one bed and bedding.

"Item. It is my will that if either of my said sons, namely, John or Jacob Kittredge, should happen to die without any lawful heirs of their own, then the share of him who may first decease shall accrue to the other survivor and his heirs."

Independent of the last clause, by which the estate is given over, I am of opinion that the sons would have taken an absolute estate in fee-simple. 1. Because one of the devisees, John Kittredge, is made executor of the will, and is required to see that all the testator's debts and legacies be paid, out of that part of the testator's estate devised to himself and his brother Jacob. This is a charge on John, personally, in respect of the estate given to him, as was held in Doe v. Snelling, 5 East, 87; Lithgow v. Kavenagh, 9 Mass. 161; Wait v. Belding, 24 Pick. 129. The distinction is between a charge to be paid out of rents and profits only, and a charge to be paid by the devisee at all events out of the estate in his hands. In the last case, the devisee takes a fee, though, undoubtedly, it may be cut down to an estate tail by words showing that intent. Slater v. Slater, 5 Term R. 335. As this would give a fee-simple to John, and as the intent of the testator is clear, to have the two take the same estate, the estate of Jacob would necessarily be held to be a fee simple also. See Lord Ellenborough, in Roe v. Daw, 3 Maule & S. 518. 2. Among the legacies given by the will is, the maintenance of Sarah Dwinel, until she should arrive at the age of eighteen years, "out of that part of my estate I give my sons John and Jacob Kittredge." If only life estates were given to John and Jacob, both might die before the legatee became of that age, and thus the clearly expressed intention of the testator be defeated. 3. The testator directs his debts and legacies to be paid "out of that part of my estate I have given to my two sons, John and Jacob Kittredge." It is held in Massachusetts, in conformity with many decisions elsewhere, that if the testator had a fee, a devise of his estate carries a fee. The word "estate" if not controlled by some other language of the will, being construed to designate the quantity of interest, and not merely the corpus of the subject of devise. Godfrey v. Humphrey, 18 Pick. 537.

Now, though this use of the word "estate" occurs only in the clause charging the debts and legacies, and not in that employed to make the gift, yet the intent of the testator may as well appear in the former, as in the latter clause. Indeed, all those cases, in which it has been held, that a charge upon the devisee of a gross sum, or of debts and legacies, implies a gift of more than a life-estate, are authorities to show that the testator's intent to give a fee may be found in such a clause. And if it may be inferred from the duty created by such a clause, why not also from the language employed in creating that duty; provided that language is sufficient to show, that the testator understood that he had given an estate in fee to his sons? If a devise, which, by its terms, would carry only an estate for life, is followed even in another part of the will, by language which shows the testator believed he had given a fee, a fee will pass, because the intent of the testator is to govern, and that intent is to be collected from the whole of the will.

This testator, in referring to what he had given to his two sons, calls it "that part of my estate." There are many cases in which it has been held, that the word estate is to be construed to refer to the testator's interest in the land devised, although coupled with other words which could refer only to the particular land, the subject of the devise. Thus, "my estate consisting of thirty acres of land, situate in the parish of A——;" "my estate in the occupation of B——," carry a fee; 2 Pow. Dev. 413. Here the words "estate situate," &c., mean not only the land, but the interest of the testator therein; so in the case at bar, "that part of my estate" means, not only the particular tracts of land before described, but the interest of the testator in those tracts of land. The question is, whether he intended to devise to each son an estate tail general, with cross remainders in fee, or a fee-simple conditional, with an executory devise over; and this depends on the intent of the testator to provide for a definite or indefinite failure of issue.

If the first taker was to have a fee-simple, and the estate is given over on a definite failure of issue, that is to say, in this case, a failure at the decease of the first taker, then the limitation over may take effect as an executory devise, because the contingency is determinable within those reasonable limits established by law to prevent perpetuities. This has been the law since the case of Pells v. Brown, Cro. Jac. 590.

I know of no question which is involved in so much doubt, and has been the subject of so many conflicting decisions as this one concerning the definite or indefinite failure of

issue. It has been deemed expedient in England, and in several of the United States, to remove these distressing doubts and difficulties by legislation. In Massachusetts there is no statute on the subject; and this question in the case at bar must be decided according to the rules of interpretation, which make part of the common law of the state. If I can find in the decisions of the highest judicial tribunal of the state, any settled rule of construction applicable to this will, and capable of determining whether this testator has provided for a definite or indefinite failure of issue, it is my duty, as it certainly would be my pleasure, to follow and apply it. In Jackson v. Chew, 12 Wheat. [25 U. S.] 153, and Waring v. Jackson, 1 Pet. [26 U. S.] 570, cases which went to the supreme court from the state of New York, that court declined to review the decisions on this subject, because it was found there was a settled rule in the state of New York. My first duty, therefore, is to ascertain whether the law of Massachusetts is settled.

The case of Parker v. Parker, 5 Metc. [Mass.] 134, was cited as controlling the case at bar. I do not think it can be so considered. I think that case was determined upon two points. 1. That by the true construction of the whole will taken together, the sons took no more than an estate tail. 2. That the rule in Purefroy v. Rogers, required the estate limited over, to take effect by way of contingent remainder. It is true, that the rule settled in Purefroy v. Rogers, 2 Saund. 388, has been often recognized in this country, and especially in Massachusetts. Hawley v. Northampton, 8 Mass. 3; Nightingale v. Burrell, 15 Pick. 110; Parker v. Parker, 5 Metc. [Mass.] 134. That rule as laid down by Lord Hale is, that "where a contingency is limited to depend on an estate of freehold, which is capable of supporting a remainder, it shall never be construed to be an executory devise, but a contingent remainder only, and not otherwise." But this rule does not operate until it is ascertained what the particular estate is, and that it is capable of supporting a contingent remainder.

I do not understand it to be a rule of construction, to be used in determining what particular estate the testator intended to devise, but a rule of law which determines the kind of estate which must be deemed to be limited over after the particular estate intended to be devised has been ascertained. And, therefore, I have not allowed it to have any weight in this case. The difficulty which I find in assenting to this decision of Parker v. Parker, arises from two considerations. The first is, that the limitation over is clearly upon a definite failure of issue, because the first taker must not only die without issue, but he must die before he arrives at the age of twenty-one. If he survives the age of twenty-one years, the estate is not to go

over, although the next day he should die without issue. In that event, the estate is to go to his heirs general, for he leaves no heirs of his body, and the estate is not to go over; it must therefore go to his heirs general, if he has more than a life-estate; and accordingly it has been decided in many cases, that if the limitation over be upon the contingency of dying under age and without issue, the first taker has a conditional fee-simple and not an estate tail.

Mr. Justice Story so held in Lippett v. Hopkins, [Case No. 8,380,] where the elder authorities are all cited; and more recently the same rule is laid down and acted on in Glover v. Monckton, 3 Bing. 13; Doe v. Johnson, 16 Eng. Law & Eq. 550; Barnitz v. Casey, 7 Cranch, [11 U. S.] 456, and also in Ray v. Enslin, 2 Mass. 554, and Richardson v. Noyes, Id. 56. This distinction between a definite or indefinite failure of issue, was not adverted to by either the counsel or the court in Parker v. Parker. It is not easy to reconcile this decision with that of Richardson v. Noyes, 2 Mass. 56; but if there is any discrepancy, it touches the question, what estate was intended to be given to the first taker.

As I am satisfied, that under this will the sons were intended to have a fee; and as the provisions of this will are substantially different from those in the case of Parker v. Parker, so far as respects the estate of the first taker, I do not consider that case can apply to this one. In Hawley v. Northampton, 8 Mass. 41, Mr. Chief Justice Parsons says: "Now it seems to be settled, that a devise to one and his heirs, and if he die without issue, or without leaving issue, then to another, creates an estate tail in the first devisee with a remainder over, when the limitation over can take effect as a remainder, unless there are other words to control this construction." This rule, with its qualification, being in conformity with the earlier cases in Massachusetts, and with the whole current of decisions in England, and with very numerous decisions elsewhere, I consider to be the law of Massachusetts, and that the difficult inquiry in this case arises under the qualification of the rule; and is, whether there are in this will words sufficient to render inapplicable this rule of construction.

Before adverting to some of the most important cases on this subject, I think it may be said with truth, that the American courts, while they have recognized the rule, have shown a strong disposition to lay hold on pretty slight expressions in the will to defeat its operation; a tendency which has been effectually sanctioned, not only in several states in this country, but in England, by legislation which abolishes the rule altogether. A review of the American cases on this subject would occupy too much space. I will refer to some of the most important. Anderson v. Jackson, 16 Johns.

382; Wilkes v. Lion, 2 Cow. 333; [Patterson v. Ellis,] 11 Wend. 259; [Cutter v. Doughty,] 23 Wend. 513; Saund. Ch. 456; [Den v. Schenck, 8 N. J. Law,] 3 Halst. 29; [Morgan v. Morgan,] 5 Day, 517; [Couch v. Gorham,] 1 Conn. 36; [Rapp v. Rapp, 6 Pa. St.] 6 Barr, 45; [Johnson v. Currin, 10 Pa. St.] 10 Barr, 498; Jackson v. Chew, 12 Wheat. [25 U. S.] 153; [Hall v. Chaffee,] 14 N. H. 215, opinion of Parker, C. J.; and the supreme court of Massachusetts in Ide v. Ide, 5 Mass. 500, and Richardson v. Noyes, 2 Mass. 56, have evinced a like tendency. In Ide v. Ide, the devise was, to the testator's son and his heirs; but if he should die and have no lawful heirs, what estate he shall leave to be equally divided between I. and N. This was held to import a definite failure of issue, by reason of the words, what estate "he shall leave." In Richardson v. Noyes, 2 Mass. 56, the devise was to three sons, not expressly in fee; and if either or any of them should die without children, the survivor or survivors to take; this was held to give a fee-simple, defeasible on the first taker's dying without issue, living at his decease.

Let us now turn to this will to see whether the testator intended to give the share of each son over, if he should die without issue living at his decease, or upon an indefinite failure of issue. His words are, that if either of my said sons should happen to die without any lawful heirs of their own, then the share of him who may first decease, shall accrue to the other survivor and his heirs. The words "without any lawful heirs of his own," cannot be construed literally, because the contingency provided for, is the survivorship of one who would necessarily be a collateral heir; heirs of his own must, therefore, be construed to mean lineal heirs of his own. Lewis, Perp. 311; 2 Jarm. Wills, 238.

The question is, whether this failure of lineal heirs was to be on the decease of the first taker, or at any time afterwards. I am of opinion that it was a definite and not an indefinite failure of issue which was thus provided for, and for the following reasons:—First. There can be no doubt that a fee-simple and not a fee-tail is devised over. The devise is to "the other survivor and his heirs;" yet, this is called the share of him who may first decease. If the word "share" is construed to mean the quantity of interest in the particular land which was devised to him who may first decease, it would follow, that, inasmuch as a fee is given over from the first taker, a fee was devised to the first taker; such a deduction is but the converse of the reasoning by which a fee is held to pass under a devise of the testator's estate. That reasoning is, that the word estate means the interest of the testator, and as he had a fee-simple, a fee-simple is given. Here a fee-simple is given over, and it is designated as the share of the first taker; if that means the estate

or quantity of interest of the first taker, the testator has, in effect, described it as a fee-simple, by giving it over as such. I do not perceive any good reason why the word "share" may not be thus interpreted. In Pettywood v. Cook, Cro. Eliz. 52, where there was a devise in fee to three persons, in severalty, and if either of the devisees should die without issue, the survivors should enjoy "totam illam partem," it was held only a life-estate was given by those words; but Willes, Ch. J., in Moone v. Heaseman, Willes, 143, says, he should have decided otherwise, as does Lord Ellenborough, in Bebb v. Penoyre, 11 East, 162, who was inclined to the opinion, that the words "my half part," would carry the interest of the deviser. In Denn v. Balderston, Cowp. 257, there seems to have been no doubt felt that the words "their property and share in the premises," would carry the whole estate; and the use of the phrase, "share and share alike," is habitual among conveyancers to designate an equal division of the subject, both as to quantity of estate as well as the corpus or thing devised. So in Paris v. Miller, 5 Maule & S. 408, the words being "my share of the Bastile and other estates," it was held that the word "share" denoted the interest in the thing devised. Without undertaking to say that a devise over of a fee, by the name and description of the share of A. B., necessarily imports that A. B. took a fee, I think it has a tendency to show such was the understanding of the testator, which may or may not be sufficient, according to the particular phraseology of the will in question.

Second. This gift to the two sons includes personal as well as real estate. The assumption, that the testator intended to limit over personal estate, consisting of tools and utensils, bonds and other choses in action, and cattle and horses, in the event of an indefinite failure of issue, is very violent; a similar state of facts in Richardson v. Noyes, 2 Mass. 56, led Mr. Justice Sedgwick to declare that such a supposition was absurd. I am aware that there is considerable weight of authority in favor of the position that this difficulty is to be got over by holding, that two different limitations were intended; that as to realty the testator intended an indefinite, and as to the personalty a definite failure of issue. This resort seems to be countenanced by Parsons, Ch. J., in Hawley v. Northampton, 8 Mass. 39. He refers to some of the authorities which support it; others are: [Sheffield v. Lord Orrery,] 3 Atk. 288; [Crooke v. De Vandes,] 9 Ves. 203; [Ryder v. Gower,] 6 Brown Parl. Cas. 309; [Den v. Shenton,] 2 Chitty, 662; [Mazyck v. Vanderhorst,] Bailey, Eq. 48. But I apprehend that the number as well as the weight of the authorities is the other way. [Addlington v. Cann,] 3 Atk. 147; [Morgan v. Surman,] 1 Taunt. 289; [Campbell v. Harding,] 2 Russ. & M. 390, denying the

distinction between real and personal estate, as do Lord Hardwicke, [Beauclerk v. Dormer,] 2 Atk. 314; Lord Thurlow, [Newman v. Newman,] 1 Brown, Ch. 188; [Everest v. Gell.] 1 Ves. Jr. 286; Lord Alvanley, [Rawlins v. Goldfrap,] 5 Ves. 440; Lord Loughborough, [Chandless v. Price,] 3 Ves. 99; Sir William Grant, [Barlow v. Salter,] 17 Ves. 479; Lord Kenyon, [Porter v. Bradley,] 3 Term R. 143; [Roe v. Jeffery,] 7 Term R. 595; the court of king's bench, [Dansey v. Griffiths,] 4 Maule & S. 62; and the supreme court of North Carolina, [Den v. Zollicoffer,] 3 Dev. & B. 438. I would speak with proper reserve concerning what has produced this distressing conflict of opinion and decision; but it seems to me to be going too far to attribute to a testator an intention to make distinct and different limitations, when he has signified no such intention; but on the contrary has given over both species of property by the same words, as forming one subject, and to be affected by only one contingency.

Third. The particular language of this clause. in this will, in my judgment, points strongly to a definite failure of issue. The testator makes no attempt to continue the whole property in the issue; for whether the estate of the first taker be held to be a fee-simple or a fee-tail, he has clearly limited over, a fee; and it is not probable that his intent was, that in the event of both moieties being united in the survivor, he should hold one half in tail, and the other half in fee. The use of the words "other survivor," in this clause, taken in connection with the words "first decease," are also entitled to much weight. I am aware that there are many decisions that the word "survivor" means simply "other," and does not import a definite failure of issue. See Chancellor Kent's opinion in Anderson v. Jackson, 16 Johns. 418; Doe v. Wainewright, 5 Term R. 427; Cole v. Sewell, 2 Con. & L. 344. But there are weighty authorities the other way, particularly in the state of New York. See Jackson v. Chew, 12 Wheat. [25 U. S.] 153, and the New York cases cited above.

In this will the limitation over is not simply to the survivor, but to "the other survivor." To construe "survivor" here to mean simply "other," would deprive it of all force. It is to be observed, too, that it is only the share of him "who may first decease" which is given over. These words certainly add to the strength of the word survivor. That word naturally imports the one who shall be alive at the decease of the other. Here, then, the testator in describing the subject of the devise over, has called it the share of him who may first decease; and in describing the one who is to take, has used a word which indicates that he is to be alive when the estate goes over. It seems to me that the natural construction is, and the real meaning of this testator was, that if one of these sons should die without issue in the lifetime of the other, the other was to have the whole. If this contingency should not happen, the testator desired to make no further provision on the subject.

To declare this or any other construction of this clause to be free from doubt, or in entire harmony with all the authorities, would prove nothing but want of reflection or examination. All I can venture to affirm is, that after deliberate and attentive consideration of the will, and of the rules of construction which seem to me applicable to it, the best opinion I have been able to form is, that by way of executory devise, the share of the son first dying without issue in the lifetime of the other, was to go over to that survivor, and that, subject to this contingency, each took a fee-simple.

[NOTE. The demandants sued out a writ of error from the supreme court. Mr. Justice Grier, speaking for the court, held: "There are no words of inheritance in this first clause of the devise to John and Jacob; but such words are not absolutely necessary in a will to the gift of a fee. The subject of this devise is described as 'that part of my estate.' The word 'estate,' or 'that part of my estate,' has always been construed to describe, not only the land devised, but the whole interest of the testator in the subject of the devise. * * * Moreover, the legacy given for the maintenance of Sarah Devinney, 'to be paid out of that part of my estate given to John and Jacob,' would be defeated by their death, before she arrived at the age of 18, if the devise to them was of a life estate only. The intention of the testator must be drawn from the whole context of his will. * * * We are of opinion that John and Jacob each took a fee in their respective 'share' or moiety of the estate devised to them. It remains to consider the effect of the second clause of the will, which is in these words: 'It is my will that, if either of my said sons * * * should happen to die without any lawful heirs of their own, then the share of him who may first decease shall accrue to the other survivor and his heirs.' Viewing this clause free from the confusion of mind produced by the numerous conflicting decisions of courts, and untrammeled by artificial rules of construction, we think that no two minds could differ as to the clear intention of the testator. By 'lawful heirs of their own' he evidently meant lineal descendants or issue. The contingency contemplated is as definite as language can make it." The judgment of the circuit court was affirmed. Abbott v. Essex Co., 18 How. (59 U. S.) 202.]

The following opinion [reprinted from 17 Law Rep. 616, note] of the late Hon. Jeremiah Mason, given in the year 1833, will be read with interest in connection with the foregoing decision:

OPINION. I have considered the question proposed on the devise of the will of John Kittridge to his sons, John and Jacob, viz:--1st. What kind of estate did John and Jacob take by the will? 2d. Was it an estate tail? 3d. If so, could either John or Jacob so dispose of it as to bar the heirs in tail? 4th. If an estate tail was given, does Jacob's part go to the daughter of Jacob, the son of Jacob the devisee, or to Thomas, the oldest son of Jacob the devisee, now surviving?

The first clause of the devise giving the real estate with certain personal estate to the two sons, John and Jacob, without any limitation, and charged with the payment of debts and legacies, would create a fee simple by implication,

were not this implication repelled by the next clause. Such construction arises from the presumption that the testator intended a benefit to the devisees; which, if a life estate only was given, might fail or be defeated by their death, before the rents or income had equaled the amount of the charges. But a life estate cannot be thus enlarged to a fee simple by construction against the manifest intention of the testator. It is sufficiently apparent, from the subsequent clause, that such was not the intent of the testator in this case. Besides a fee tail cannot by such charge alone be converted into a fee simple. It has been held that such implication does not apply to a devise of a fee tail.

The second clause, I think, gives the two sons, John and Jacob, a fee tail general in their respective moieties, with cross remainders in fee simple. It is obvious the dying without any lawful heirs, as used in this clause, must mean heirs of the body, as neither of the brothers could die without collateral heirs, while the other or his issue survived. The giving of the share of him who may first decease to the survivor and his heirs, must be construed to mean the share of the one so dying without issue. After giving each son a fee tail, it would be absurd to suppose the testator intended that the share of the one who should happen to decease first should go to the survivor in case the deceased son left issue. Jacob, it is stated, died first in 1806, leaving issue, John, Jacob, Thomas, and other children, having by deed of bargain and sale, dated 19th September, 1789, conveyed all that was devised to him to his brother John, to hold in fee simple. John, the devisee, died in 1826, never having had issue, and by his will devised all his estate to a sister and niece. John Kittridge, the oldest son of Jacob, the devisee, died in 1822, without issue. Jacob Kittridge, the next eldest son, died in 1831, leaving issue, one daughter. Thomas Kittridge, the next oldest son, is still living. It was easy for John and Jacob, the devisees, to have destroyed the entailment by a common recovery, but it is supposed no recovery was suffered, as none is stated. By a statute of this state, (1791, c. 60.) a deed duly witnessed and for good, or valuable consideration and bona fide, destroys the entailment and bars the heir in tail. But the deed from Jacob to John was dated in 1787, before the passing of that statute, and therefore cannot have such effect. The deed was valid to pass the estate during the life of Jacob, and no longer; operating by force of the statute of uses, it created no discontinuance. On his death in 1806, the moiety given him in tail went to his eldest son John. On the death of John, the son, in 1822, without issue, it came to Jacob, the next eldest son, and on his death in 1831 it came to his daughter, she being his only child. In case I am right in the opinion that the devise created cross remainders in fee simple on the death of John in 1826 without issue, the heirs of Jacob were entitled to his moiety.