J. B. Swan, J.
The second item of the will of Ferx'is creates an estate for life in Elizabeth, his daughter. By the third item the devises to Elizabeth’s children (if she shall have any heirs) the same lands in fee. The foux’th item provides that if Elizabeth shall die without children, the same lands shall pass to his brothex-s and sistex's.
It is claimed by the plaintiffs that the foux’th item of the will: “If my daughter, Elizabeth A., shall die without childx’en, then and in that case, I give and bequeath said laxxds to my brothers and sisters, their heirs and assigns forever, after the death of Elizabeth *575, 576 A., as aforesaid,” is a limitation, upon the estate in fee of the children of Elizabeth A.; that an estate tail in her children was created by the words, “ if Elizabeth A. shall die without children,” and the estate in them was thereby limited to the issue and the issue of the issue of such children until their extinction. *In [575 other words, Ferris intended, by the fourth item of his will, to cut down the fee simple created in the children of Elizabeth by the third item of his will, to a fee tail, and thereby create an estate-tail in the issue of Elizabeth, limited only by the indefinite failure of such issue.
It is the settled law of England, and has been followed in many of the states in this country, that where there is a devise in fee to-A, but in case he die “without heirs,” or “without issue,” or “ on failure of issue,” then to B in fee; the words, “if he die without issue,” or words of similar import, do not mean, as the terms obviously import, a dying without issue at the time of the death of A, but means a failure of issue whenever it shall happen, and that these words are not satisfied until the issue and the issue of the issue of A and their descendants become extinct. Under this construction of such terms in a will, the estate of the issue of A is considered an estate tail, limited only by an indefinite failure of issue, and consequently that, when there is no longer any issue of the issue of A, the estate would devolve upon B. The courts, first perverting the language of the will by holding that these words created an estate tail limited only by an indefinite failure of issue, declared such a limitation void, because the contingency, upon which the estate of B would accrue, was too remote, depending, as it did, upon a general failure of issue. It is quite difficult to comprehend how the words, “if he die without issue,” should be taken to mean whenever his issue shall fail indefinitely at and after his death, or how a man who has died with issue living can ever afterward be said to have died without issue.
This strange construction of such words seems to have arisen from the language of the statute de donis, regulating estates tail, which required that when lands were given by one to another and the heirs of his body, such lands should remain unto the issue of them to whom it was given after *their death, or should [57i> revert to the donor or his heirs if issue fail.
The English courts, as if to judicially announce that this construction of such words was forced and unsound, have held that the same words, when used in relation to the disposition of per *577 eonal property, meant simply if A, the first taker, dies without issue living at the time of his decease. And the English judges, who have deplored this absurd and unreasonable perversion of the meaning of the words, and disregard of the. intention of testators, have, notwithstanding, invcterately but reluctantly followed this construction of devises in respect to real estate, because imbedded in the peculiar and complicated, system of English titles.
The English courts, however, have sought, with eager ingenuity, words in wills or circumstances which would avoid the rule. Thus it has been held that if the limitation over was upon the first taker dying without issue living, or dying without leaving issue behind him, that the will meant issue living at the death of the first taker. But the disposition in this country to break in upon the old English construction upon this subject is very manifest. Thus, in the case of Morgan v. Morgan, 5 Day, 517, which was like the case now before us. In that case A devised his real estate to his sons B, C, and D, “their heirs and assigns foreverand in case either of his sons should “ die without children, his brothers should have his part in equal proportions.” B married, and had issue, a son, who died during the life of B. B died, and left no children living at the time of his death. The court held that the limitation over was good by way of executory devise, and that the words, “ die without children,” was intended a dying without children living at the death of B. In Harris v. Smith, 16 Georgia, 577] 545, a testator devised land to A, and if A ^should “ die leaving no lawful heirs, then, and in that case, it is my will that all of the said property shall be divided, share and share alike, between the children of B.” It was held that the words, “ die leaving no lawful heirs,” were equivalent to the words to “ die without children,” which were equivalent to “ die without children living at the death of A.” In the case of Anderson v. Jackson, 16 Johns. 382, it was decided that after the devise to the sons of A and B in fee, the limitation, that if either should die without lawful issue, his share to go to the survivor, was good as an executory devise, and that the true construction was a failure of issue, living at the death of the first taker. It will be perceived from these cases, and others might be cited to the same effect, that in those countries where the old English interpretation of the words, “if he die without issue,” have not been expressly disclaimed, courts have constantly evaded that interpretation by seizing hold *578 of circumstances and words deemed sufficient to establish the natural sense of the words; so that the interpretation and effect of these words may be considered a rule of property, depending upon the variable opinions and feelings of judges, some of whom may think these words sufficiently restricted by other words or cireum - stances, which other judges may consider as wholly inadequate.
It is a singular fact that with the repeated decisions of the English courts upon this subject, testators, from generation to genera•ation, persisted in using these natural words, and which were held to be inoperative and void, until, in the first year of the reign of the present Queen, a statute was passed declaring that the words “ die without issue,” or other words which may import a want or or failure of issue, should be construed to mean dying without issue living at the death of the person, and not an indefinite failure of issue, unless a contrary intention appear by the *will. The [578 English rule adopted in Virginia, and in a modified form in New York, has met the same fate by legislative interposition. In Ohio, as in Kentucky, the English rule of interpretation has never been sanctioned; and in the latter state the subject was very fully considered in the case of Daniel v. Thomson, 14 B. Mon. 662; and the English rule was rejected as one unknown to the community; contrary to the natural sense and common use of words ; founded upon laws and estates inapplicable to titles in Kentucky, where, as here, estates tail are abrogated; and so evaded by courts as to be made to depend upon the discretion and variable opinions of judges. If there be any rule of interpretation of words which defeats the intention of the testator, and to which the following language of Justice Hitchcock is applicable, it is the English rule now under consideration: “ I must be permitted to say that these rules, in most eases, are applied not for the purpose of ascertaining, but of defeating the intention of the devisor. In this state, however, we are required by statute, to carry out this intention ; and I presume no such statute would have been passed, had it not been supposed that these antiquated rules of construction were too much regarded by our courts.”
We are all of the opinion, for the reasons which have been indicated, that the words, “ if he die without issue,” or “ without leaving issue,” or “heirs of his body,” or “children,” or other words of similar import, are to be interpreted according to their plain, popular, and natural meaning, as referring to the time of the per *579, 580 son’s death, unless the contrary intention is plainly expressed in the will, or is necessary to carry out its undoubted purposes. We could, without impeaching the old English rule of interpretation, find in the words of the will before us, and in the fact that the broth-579] ers and sisters of the testator were living at the *time he made his will, sufficient to restrict the contingency and the devise over, to the time of the decease of his daughter. But we are unwilling to make an exception by which we sanction the English construction of the words under consideration, as referring in general to an indefinite failure-of issue, and at the same time make the case before us an exception to that rule ; thus leaving open a wide field of uncertain interpretation of words and circumstances, so that'no man would know the nature of an estate which depended upon the interpretation of these or the like words, until there had been a decision on the particular will, on which the question might arise.
If the English rule of interpretation had been recognized by our courts as a rule of property we would not disturb it. It would then be a fit subject of legislation. But it never has been recognized ; and the uniform course of the decisions of the courts of this state has been to so construe wills as to carry into effect the intention of testators. To adopt the English rule, is clearly to defeat what every person must acknowledge is the real and the lawful intention of testators; it is to presume that a testator intended to create an estate forbidden by our statute relating to entailments; and a rule too, which, wherever recognized by courts, has been changed by legislation.
Indeed, the only certain and stable principle is to hold that these words in a will, as in other cases, must be taken in their natural sense, unless a contrary intention is plainly expressed.
Applying this rule to the case before us, the will provides that if Elizabeth should die without children, the estate should pass to the brothel’s and sisters of the testator. Elizabeth had no children, nor grandchildren, when she died, and the contingency provided for by the will — -the existence of children — at that time occurred. Upon 580] her ^decease the title vested in the brothers and sisters of the testator, and, under the counter-claim, judgment must be entered accordingly.
Bartley, C. J., and Brinkerhoee, .Bowen, and Soott, JI., concurred.