## SEITZ v. SEITZ.

---

DEEDS, CONSTRUCTION OF; JOINT TENANCY AND TENANCY IN COMMON; EVIDENCE; LATENT AMBIGUITY.

1. While in construing a deed the construction is favored which makes a tenancy in common rather than a joint tenancy, it is a rule of the common law in force in this District that a conveyance of land to two or more persons without any sufficient indication of intention in the instrument that the grantees are to hold in severalty, is to be construed as creating a joint tenancy and not a tenancy in common, whatever may have been the intention of the parties in that regard.

2. In construing such a deed its terms can not in the absence of latent ambiguity be varied or explained by oral evidence.

3. Where a recital in such a deed (which conveys to a brother of the grantor and the wife of another brother an undivided two-thirds interest, the grantor retaining a one-third interest) is to

the effect that the purchase money had been paid jointly by the several parties, such recital will not convert the tenancy created from a joint tenancy to a tenancy in common.

4. When the *habendum* and *tenendum* clause in such a deed provides that the grantees shall hold the property "to their *sole* use, benefit and behoof forever," the term *sole* is not equivalent to *several*, but to *only* or *exclusive*, and therefore by its use in such connection a tenancy in common is not created.

5. The fact that the original joint interest recited in such a deed to have been in the grantor, was severed, as to the grantor on the one hand and the grantees on the other, by the execution of the deed, does not justify a construction of the instrument as a tenancy in common. There is no inconsistency, legal or equitable, in the severance of his interest by the grantor and the continuance of the other in joint tenancy.

No. 680. Submitted October 7, 1897. Decided November 1, 1897.

HEARING on an appeal by the defendants from a decree in favor of the complainants in a suit for the construction of a deed and for a partition of certain real estate. *Reversed.*

The COURT in its opinion stated the case as follows:

The question in this case is whether a certain deed of conveyance therein set forth is to be construed as creating a joint tenancy or a tenancy in common between certain grantees therein named.

From the record it appears that, prior to the year 1877, the property mentioned in the cause, which is part of lot one (1), in square 343, in the city of Washington, then belonging to one George Seitz, ancestor of the parties to the cause bearing the name of Seitz, became involved in litigation in consequence of the efforts of the creditors of George Seitz to subject it to the satisfaction of certain judgments which they had procured against him. The result of the litigation was a sale of the property under a decree in equity. At this sale, in pursuance apparently of some family arrangement, the property was purchased, on October 23, 1877, by Joseph Franklin Seitz, a son of George Seitz, acting, as it appears from the record, under the direction of an elder brother, John F. Seitz, who was then, and for

several years previously had been associated with his father, George Seitz, under the firm name of George Seitz and Son, in the conduct of a bakery upon the premises. The purchase money was the sum of $4,600, of which the sum of $1,561.71 was paid in cash, and the residue, amounting to $3,029.39, was secured by deed of trust upon the premises. But the deed of conveyance by the trustee who made the sale to Joseph Franklin Seitz was not executed until September 24, 1878, the delay apparently having been occasioned by the efforts of John F. Seitz to effect a settlement of some other judgments against his father, which he finally accomplished, and for which the money required ($994.84) was in some way raised and secured by the same deed of trust, which bore the same date as the deed of conveyance from the trustee to Joseph Franklin Seitz. These two deeds are in the usual form of such conveyances, and their contents serve to throw no light upon the controversy between the parties to this suit. But it may be added that it seems to be very clear from the testimony that the money wherewith to pay the indebtedness secured by the deed of trust was provided by John F. Seitz.

Subsequently, by a deed dated on April 11, 1879, and recorded on April 3, 1883, nearly four years after its execution, which is the deed that has given rise to the present controversy, Joseph Franklin Seitz conveyed a life estate in the property to his mother, Mary Elizabeth Seitz, the wife of George Seitz, and a remainder in fee simple in two undivided third parts to Alice E. Seitz, the wife of his elder brother, John F. Seitz, and Charles Leo Seitz, a younger brother, who had just become of age a few months before the execution of the deed, having been born in January, 1858. As upon the construction of this deed the determination of the controversy depends, it seems proper that it should be here given in full, with all its recitals. It is as follows:

"This indenture made this eleventh day of April in the

year of our Lord one thousand eight hundred and seventy-nine by and between Joseph Franklin Seitz, of the city of Washington, District of Columbia, party hereto of the first part, and Mary Elizabeth Seitz, of the same place, party hereto of the second part, and Charles Leo Seitz and Alice E. Seitz, wife of John F. Seitz, of the same place, parties hereto of the third part :

" Whereas the said Joseph Franklin Seitz did, on or about the 23rd day of October, A. D. 1877, purchase from R. Ross Perry, trustee, in a cause then pending in the Supreme Court of the District of Columbia, between John T. Mitchell and George Seitz et al., said cause numbered 2973 equity docket, the hereinafter-described premises, and has since received a conveyance of the title to the said premises from the said trustee :

"And whereas the said party of the first part in making the said purchase was acting, not for himself alone, but also for his brother Charles Leo Seitz, and John F. Seitz, husband of the said Alice E. Seitz, from whose labors jointly with his own the purchase money of the said property had been derived :

"And whereas the said party of the second part is the mother of the said Joseph Franklin Seitz, Charles Leo Seitz and John F. Seitz, who are anxious to provide for her during her life in consideration of the natural love and affection which they entertain for her and in recognition of her assistance to them in their business endeavors :

" Now, therefore, this indenture witnesseth that the said parties of the first and third parts, with the concurrence of the said John F. Seitz, in consideration of the premises and of the natural love and affection which they feel for the said party of the second part, and further in consideration of the sum of five dollars, current money of the United States, to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained and sold, aliened, enfeoffed, released, conveyed and

confirmed, and do by these presents, grant, bargain and sell, alien, enfeoff, release, convey and confirm, unto the said party of the second part for the term of her natural life all that lot of ground situate in the city of Washington, District of Columbia, and known on the ground plan thereof as all that part of lot numbered one, in square numbered three hundred and forty-three (343), contained within the following metes and bounds (*here follows a specific description of the property by metes and bounds*), together with all the improvements, rights, tenements, appurtenances and hereditaments to the same in any manner belonging or pertaining.

"To have and to hold the said premises as described and the appurtenances thereof unto and to the use of the said party of the second part during her natural life for her sole and separate use, and for that purpose and for such term only.

"And the said party of the first part, with the acquiescence of the said John F. Seitz, and in recognition of the implied trust upon which he purchased the said premises, and further in consideration of the sum of five dollars in lawful money of the United States to him in hand paid by the said parties of the third part at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained and sold, aliened, enfeoffed, released, conveyed and confirmed, and doth by these presents, grant, bargain and sell, alien, enfeoff, release, convey and confirm unto the said parties of the third part, their heirs and assigns, two undivided third parts of the hereinbefore described premises, with the appurtenances thereof, subject to the life estate of the said party of the second part: To have and to hold the said two undivided third parts of the hereinbefore described premises, with the appurtenance thereof, unto and to the use of the said parties of the third part, their heirs and assigns, to their sole use, benefit and behoof forever.

"In testimony whereof the said parties of the first and

third parts and the said John F. Seitz, have put their hands and seals hereunto on the day and year first hereinbefore written.

(Signed)          "JOSEPH FRANKLIN SEITZ.     [Seal.]

                  "ALICE E. SEITZ.            [Seal.]

                  "CHAS. L. SEITZ.            [Seal.]

                  "JNO. F. SEITZ.             [Seal.]

    "Witness:

        "WM. HELMICK."

(Here follows the certificate of acknowledgment in due form over the signature and seal of Wm. Helmick, Justice of the Peace).

On August 16, 1890, Charles Leo Seitz, who had been secretly married in 1879, a short time after the execution of the deed just mentioned, died intestate, leaving surviving him his wife, Nellie Seitz, and three children, the appellees, Arthur Seitz, Mary Seitz and Lottie Seitz, who are his heirs at law, the oldest of them not having reached the age of ten years. On June 24, 1891, Joseph Franklin Seitz, at the request and by the procurement of John F. Seitz, conveyed to the appellant, Alice E. Seitz, wife of John F. Seitz, the one-third interest in the property which he had retained from the preceding deed, for the consideration, as it appears both from the deed itself and the testimony, of $4,200— although from the testimony in the case there would appear to be some element of mystery about the matter. On January 5, 1895, Mary Elizabeth Seitz, the life tenant, died, leaving surviving her her husband, George Seitz, who appears in the case as a witness for the appellants.

By a deed bearing date on January 8, 1895, the appellant, Alice E. Seitz, then apparently claiming the whole property as her own, conveyed it to appellants, Eugene Carusi and Robert E. L. White, as trustees, to secure to the appellant, Ida V. S. Greer, the repayment of a loan of $6,600, payable five years thereafter, with interest at six per centum per annum, payable semi-annually; and in the execution of this

deed her husband, John F. Seitz, united with her.  It is conceded that the proceeds of the loan were used in part to pay the deferred portion of the original purchase-money which had been secured by the deed of trust given by Joseph Franklin Seitz under date of September 24, 1878.

Subsequently, on August 15, 1896, the minor children of Charles Leo Seitz, by their mother, Nellie Seitz, as their next friend, claiming that the deed from Joseph Franklin Seitz of April 11, 1879, heretofore set forth in full, was a conveyance to Alice E. Seitz and their father, Charles Leo Seitz, as tenants in common and not as joint tenants; that under it he took one-third undivided part of the property in severalty, and that they as his heirs at law were now entitled to such one-third part, filed in this cause their bill of complaint for the determination of their right, a sale of the property for the purpose of partition, and for an accounting as to the indebtedness thereon and the proportion of such indebtedness chargeable against their interest in the premises.  The bill was filed against Alice E. Seitz and John F. Seitz, her husband, and against the trustees and beneficiary named in the deed of trust given by Alice E. Seitz and John F. Seitz under date of January 8, 1895—all of whom contested and denied the right of the complainants to any interest in the property; maintained that as between Alice E. Seitz and Charles Leo Seitz the deed of April 11, 1879, from Joseph Franklin Seitz created a joint tenancy, and not a tenancy in common; and that, in consequence of it, upon the death of Charles Leo Seitz in 1890, Alice E. Seitz, by the right of survivorship incident to joint tenancy, took the whole and entire estate in the two-thirds undivided parts conveyed to the two of them by that deed, to the exclusion of the children of Charles Leo Seitz.

Testimony was taken on both sides, most of it probably incompetent and inadmissible.  It appears from it, however, that the property is now of the value of about $9,000 or $9,500; that, in 1877 and for many years before and

after that time the bakery business was conducted upon
the premises by George Seitz, the father, and John F. Seitz,
his oldest son, as partners, under the firm name of George
Seitz and Son; that Joseph Franklin Seitz and Charles Leo
Seitz worked with them and in their employment as journey-
men, with rather a loose connection, as was perhaps natural
under the circumstances; that Charles Leo Seitz was physi-
cally somewhat afflicted, and was also intemperate, and
without means other than the small wages which he re-
ceived in the bakery; that he worked irregularly, and
finally quit the place; that John F. Seitz, especially in the
later years, became the principal manager of the business
and of the property, paid the taxes and insurance on the
latter, paid also the interest due on the deferred purchase
money and for all repairs and improvements made upon
the property; and that he was a man of some means.  It is
claimed, also, on behalf of John F. Seitz, that he raised or
furnished the sum required for the cash payment on the
purchase in 1877.  But it is proper to say that the testi-
mony in the case seems not to have been much, if at all, relied
upon by either side in the court below, or by that court in
reaching its final determination in the case; nor was it
relied upon in the argument in this court.

The justice holding the equity court, in a very able and
ingenious opinion, held that the deed from Joseph Franklin
Seitz, of April 11, 1879, created a tenancy in common, and
not a joint tenancy, as between Alice E. Seitz and Charles
Leo Seitz; and consequently he rendered a decree in favor
of the complainants in the suit, whereby he adjudged that
Charles Leo Seitz was the owner of one undivided third
interest in the property as a tenant in common, and that
this interest descended to the complainants as his heirs at
law.  And then he proceeded to order a sale of the whole
property for the purpose of partition.  The decree further
adjudged that in the distribution of the proceeds of sale,
one-third of the portion of the original purchase money

secured by the deed of trust of September 24, 1878, should be charged against the one-third interest decreed to be in the complainants, and the residue of the original deferred purchase money and the residue of the loan of January 8, 1895, should be charged against the two-thirds interest adjudged to be in Alice E. Seitz.

From this decree the defendants have appealed to this court.

*Mr. R. Ross Perry, Mr. Henry P. Blair, Mr. Wm. J. Miller* and *Mr. Eugene Carusi* for the appellant:

1. The common-law doctrine of joint tenancy, with its incident of survivorship, exists as fully and rigorously in this District as it did at common law in England. *O'Brien* v. *Dougherty,* 1 App. D. C. 148. In order, therefore, to escape the application of this doctrine, it is necessary to show that within the four corners of the deed in question there can be found evidence of an intention on the part of its parties to create a tenancy in common as contradistinguished from a joint tenancy.

Upon an examination of the language of the deed in question, the only word in it which can be found to base a destruction of the joint tenancy upon, is the word "sole" in the *habendum* clause. This word is interpreted by the court below as meaning separate. But the same word is used in a prior part of the same deed. In a prior *habendum* clause the property is to be held "unto and to the use of the said party of the second part during her natural life, for her sole and separate use." Whatever other meaning may be given to the word sole in this connection, it can not be interpreted to mean separate; because the parties have employed it in contradistinction to that word. Therefore, when they again employ the word sole subsequently in the second *habendum* clause, and exclude the word separate, they clearly indicate whatever else they may mean, they do not mean separate. But if the word sole can not be interpreted as

qualifying the separate interest of the grantees, it must necessarily qualify their joint interest. However that joint interest be qualified, it remains joint, and the incident of survivorship attaches to it.

It is well settled that when property is vested in two or more persons by the same joint purchase there arises at once, both at law and in equity, the presumption that it vested an estate in joint tenancy; and that this presumption can be overthrown in equity only by proof of circumstances from which the court can infer that the parties intended a several rather than a joint estate.   Freeman, Co-ten. & Part., Sec. 18; *Lake* v. *Craddock*, 1 Lead. Cases Eq., 227 note (2d Am. Edit.).

The recital in the deed that Joseph Franklin Seitz, in purchasing the property, "was acting not for himself alone, but also for his brothers, from whose labors, jointly with his own, the purchase money of the said property had been derived," can not be relied on as evidence of an intention to create a tenancy in common.   The presumption is that the purchase money was contributed equally; and this fact, so far from evidencing an intention in the purchasers to create a tenancy in common, is rather regarded in equity as "a purchase by them jointly of the chance of survivorship."   2 Cruise, Title XVIII, Ch. 1, Sec. 35; *Lake* v. *Gibson*, 1 Lead. Cases Eq., 223 (3d Am. Edit.); 2 Story Eq. 617, Sec.,1206; 2 Sugd., Vendors, Ch. XX, 901, Sec. 1.

Whatever weight, however, is to be given to the words "sole use, benefit and behoof," when they occur in the granting part of the deed, certainly when they occur in the *habendum*, they are to be taken to be simply the ordinary conveyancing form of expression usual in that part of the instrument, and are insufficient to warrant the inference of an intention to create a tenancy in common.   *Lippincott* v. *Mitchell*, 4 Otto, 767.

*Messrs. Gordon & Gordon* for the appellees:

1. No testimony is admissible on behalf of the defend-

ants to vary or contradict the recitals solemnly set forth in the deed under which the parties have derived their title, and in which the grantor declared in express terms that the purchase was made for the three brothers from "whose labor jointly with his own purchase money of the said property has been derived." Their title is based upon the deed, containing the recital, and they should certainly be estopped from denying the facts recited as the basis of their interest, and upon which the trust set forth in the original holding of Joseph Franklin Seitz, the grantor, is founded, and the said recitals should be conclusive as against them. Greenleaf, Sec. 26; 20 Am. & Eng. Encyc. L. 456; Devlin on Deeds, Sec. 997.

2. The original holding by Joseph Franklin Seitz was in trust for himself and his two brothers as tenants in common in equal shares. Where the consideration proceeds from two or more persons jointly, and the conveyance of the legal estate is taken in the name of one of them only, "a resulting trust will arise in favor of the parties not named in the conveyance, in proportion to the amount of the consideration which they respectively may have contributed." Hill on Trustees, 149. But in the present case it is not necessary to resort to evidence to establish the resulting trust, because we have the statement of the holder of the property, under seal, that he held the property, as trustee, for his brothers jointly with himself.

3. The generally accepted rule is, that joint tenancies are not favored in equity, and that the courts will view all circumstances connected with a transaction in order, if possible, to prevent the creation of a joint tenancy. Hill on Trustees, 150; Freeman on Cotenancy, Sec. 18. Certainly if there was ever a case in which an equity court might feel justified in applying the above rule, and in exercising the utmost "acuteness" in endeavoring to find from the circumstances surrounding the case, as set forth in the deed itself, an intention to create a tenancy in common, the

present is one of that class. Here the rule of survivorship applies with peculiar rigor. Three infant defendants are endeavoring to defend their title in property which no reasonable person can suppose it was intended that their father did not own, but which, owing to the greed of their uncle, and the strictly technical rules of law, they are in danger of losing, and surely the court will do all that it can, not merely as a matter of equitable justice to the claimants, but also as a rebuke to the cupidity of their unnatural relative, and to the maintenance of public morality, to vindicate their contention and follow the modern tendency which, even independent of the statutes on the subject, is in favor of such a construction as will give an estate in common. *Campbell* v. *Heron,* 1 Tayl. 191; *Caines et al.* v. *The Lessee of Grant,* 5 Binn. 119.

The extent to which the courts have gone is well illustrated in the case of *Bambaugh* v. *Bambaugh,* 11 S. & R. 191, and the case of *Galbraith* v. *Lessee of Galbraith,* 3 S. & R. 391.

Black in his Law Dictionary defines the word "sole" as follows: "Sole, single, individual, separate, the opposite of joint, as 'sole tenant.'" And the Standard Dictionary of the English Language defines the word as follows: "Being alone, existing or acting without another; individuals." So that, in the light of these general definitions, we may readily read the language—"unto and to the use of the said parties of the third part, their heirs and assigns, to their sole use, benefit and behoof forever," as meaning to the grantees' use, and to the use of their heirs and assigns, to their use, solely, or singly, or separately, and as individuals. We do not think this interpretation would transgress the tendency of the courts, and surely, in the present case, would be in strict accordance with justice and equity.

Mr. Justice MORRIS delivered the opinion of the Court:

It is with great regret that we find ourselves constrained

to reach a different conclusion in this case from that reached
by the learned justice who rendered the decree in the court
below.   We fully recognize the fact that, however the case
may have been in the past, neither in our own country nor
in England at this day is the construction favored that
would make a joint tenancy rather than a tenancy in com-
mon.   It has been said that courts of equity are even astute
to find reasons for the construction that from any given
instrument of writing would raise a tenancy in common,
rather than a joint tenancy.   And it is undoubtedly true,
that, in the vast majority of cases substantial justice is done
and effect given to the true intention of the parties by such
construction.

At the same time, we are compelled also to recognize the
fact that it is an inflexible and inexorable rule of the com-
mon law, repeatedly declared to be in force in the District
of Columbia, and become an absolute rule of property, which
could not be disregarded without disturbing a vast number
of titles and unsettling the whole law of real estate, that a
conveyance of land to two or more persons, without any
sufficient indication of intention in the instrument of con-
veyance that the grantees are to hold in severalty, is to be
construed as a joint tenancy, and not as a tenancy in com-
mon, whatever may have been the true intention of the
parties in that regard.   We know that this rule of the com-
mon law has been changed almost everywhere else by
statute ; but the Congress of the United States has not yet
thought proper to change it in the District of Columbia, not-
withstanding that its attention has been called to the sub-
ject ; and we are bound by the rule as it stands.

We are not entirely certain, however, that in applying
the rule in the present case, we are frustrating the intention
of the parties.   There are many cases of family settlement,
and for all that we know to the contrary this may be one of
them, where the idea of survivorship and the retention of
property in the hands of those immediately concerned, is

the dominant idea, and the application of the law of joint tenancy works no wrong to their purpose. But, however this may be, the law is inexorable wherever it applies, even though its results should be to exclude the claims of helpless infancy; and the only question for us here to determine is whether it applies in this case.

Extraneous considerations are not to be regarded. The great mass of the testimony in the case is probably inadmissible. The terms of the written instrument can not be varied or explained by oral evidence; and there is no latent ambiguity to be removed by a consideration of extraneous circumstances. Indeed, the testimony, such as it is, does not serve to throw light upon the matter of controversy. The court below disregarded it; and it was practically disregarded in the argument before us. We are remitted to the deed itself exclusively for its own construction.

Beyond all question, the granting clause in the deed, if taken alone, and without reference to the previous recitals or to the subsequent *habendum* and *tenendum* clause, creates a joint tenancy, and nothing else. The grant is " unto the said parties of the third part, their heirs and assigns," words which from time immemorial have always and invariably, in the absence of statutory provisions to the contrary, been construed as creating a joint tenancy. This much, of course, is not controverted by any of the parties to the controversy.

But it is claimed that by the previous recitals, by an expression in the *habendum* and *tenendum* clause indicating severalty, and by the fact that the conveyance itself operates as a severance, in favor of the grantor, of the joint interest declared by the deed to have previously existed in him in trust, and that no reason appears thereafter for the continuance of a joint interest in the other parties, enough appears to warrant a construction of the instrument as creating a tenancy in common. The learned justice, who rendered the decree in the court below, bases his conclusion

upon the *habendum* and *tenendum* clause and finds nothing in the other considerations that would justify a departure from the legal effect of the granting clause.

The recital of the deed, from which it is sought to infer a common interest of the grantees in severalty, is that in which the grantor states that he, " in making the said purchase, was acting, not for himself alone, but also for his brothers, Charles Leo Seitz and John F. Seitz, from whose labors jointly with his own the purchase money of the said property had been derived." But plainly no such inference is tenable. The recital amounts to no more than a statement that the purchase money had been paid jointly by all three parties, and this is only what happens, or what is presumed, in all cases of joint tenancy, as well as in all cases of tenancies in common, where no inequalities otherwise appear. The presumption is of equal and joint payment in both cases; and no inference either way can be drawn from any such payment. There are cases where inequalities of payment, especially where such inequality appears on the face of the deed itself, has been held to convert that which otherwise would be construed as a joint tenancy into a tenancy in common; and this construction, of course, is based upon obvious reasons of justice. But no such reasons exist in the case of equal contributions by all of the grantees; for joint tenancy, as well as tenancy in common, gives each an equal right in the estate, with equal right of survivorship and equal right of severance by the parties at will. To hold that a showing of equal contribution to the purchase money would establish of itself a tenancy in common, and not a joint tenancy, would destroy all joint tenancy, except where it was expressly declared; and would, therefore, contravene the well-established rule of law. And to this effect undoubtedly are all the authorities on the subject, which are unaffected by statute. *Lake* v. *Gibson,* 1 Leading Cases in Equity, p. 177; 1 Sugden on Vendors and Purchasers, 11th Ed., p. 902; *Aveling* v. *Knipe,* 19 Ves. 441 ; 11 Amer. & Eng.

Encyclopedia of Law, Art. Joint Tenancy, p. 1059. If the grantees in this case had been partners, and it appeared that the purchase money was derived from partnership assets, there would be reason to hold that a tenancy in common, and not a joint tenancy, was intended. But there is no claim of the existence of any such partnership. The only partnership shown to have existed was between John F. Seitz and his father, George Seitz; and if the purchase money in the case did not come from George Seitz, who however does not make claim to it, it is quite probable that it came from the partnership of George Seitz and Son. But this fact, if fact it be, does not at all aid the case of the appellees.

Greatest reliance is placed by the appellees upon the indication which they claim to be afforded by the use of the word *sole* in the *habendum* and *tenendum* clause. The argument is that the word means *several*; and that, when it was provided that the grantees should hold the property granted "to their *sole* use, benefit and behoof forever," the terms used were the equivalent of " their *several* use, benefit, and behoof forever." But we can not acquiesce in the soundness of this argument. The word *sole* does not mean *several*. No authority, legal or philological, is or can be cited where it has any such meaning attributed to it. Its signification is well recognized to be the same as *only* or *exclusively*; and the purpose of the clause, so far as any purpose can be attributed to such unnecessary verbiage, is to provide that the grantee or grantees shall hold the property granted exclusive of all the rest of the world. It would be a most strained and unnatural conclusion, and one which in all probability would greatly disturb and unsettle titles, if such words were to be construed as determining the respective rights of the grantees as between themselves.

As was said by this court, through the Chief Justice, in the case of *Rathbone* v. *Hamilton*, 4 App. D. C. 475, 489, the words quoted are no more than " a common formula found

transcribed in many deeds," and in that case they were held not to be intended to create a separate estate in a married woman.

To the same effect is the case of *Lippincott* v. *Mitchell,* 94 U. S. 767, 771, where the same or similar words were construed. There the controversy was also, as in the case of *Rathbone* v. *Hamilton,* whether a deed had created a separate statutory estate in a married woman, and the terms relied upon as creating such estate, and which occurred in the *habendum* and *tenendum* clause, were the following: " to the sole and proper use, benefit, and behoof of the said Nannie C. Mitchell, her heirs and assigns forever." Construing these words and the effect of the deed, the Supreme Court of the United States said:

"If it were intended by this deed to give the wife a separate estate, it is remarkable that in the mass of redundant verbiage employed no words clearly apt for that purpose are to be found. It is remarkable, if such an intent existed, that the phrase 'for her separate use,' or 'for her exclusive use,' or 'free from the control of her present or any future husband,' or some equivalent for one of them, was not inserted. The omission can only be accounted for upon the hypothesis that the idea of separate estate was not in the mind of either of the parties, and that hence no instruction was given upon the subject to the draftsman of the deed. There is nothing in the record to warrant the belief that the purchase and conveyance were not intended to be such a transaction in the ordinary way, without securing to the grantee any special rights touching the property, or any right other than the ownership in fee simple. The only part of the deed which gives a shadow of support to the proposition of the appellants is the language of the *habendum.* The same language is to be found in many precedents in books of forms, where certainly there was no purpose to create a separate estate."

And the court holds that the word *sole* in these forms is

the equivalent of the word *only* in the older English precedents.

This seems to us to be conclusive of the present case. The draftsman of the deed now before us for construction was evidently somewhat familiar with the legal forms of expression and the general requirements of a deed. This is clearly manifested by the general phraseology of the deed and by the evidence of the recitals. If he was utterly ignorant of the difference between a tenancy in common and a joint tenancy, which we would be compelled to assume by the argument of counsel for the appellees, it is strange that such ignorance was not otherwise manifested. The law upon the subject was well settled and uniform; and it was not unknown even to the class of laymen in the District of Columbia, to whom recourse was often had for the preparation of deeds, as well as for their acknowledgment. Adapting to the present case the language of the Supreme Court of the United States in the case above cited of *Lippincott* v. *Mitchell,* it is very remarkable that, in the mass of redundant verbiage employed in this case, no words clearly apt for the creation of a tenancy in common are to be found, if it was the intention to create such a tenancy; and the omission can only be accounted for upon the hypothesis that the idea of a tenancy in common was not in the mind of either of the parties, and therefore no instruction was given on the subject. The probabilities, indeed, are that nothing was said or thought by any of the parties to the transaction with reference either to joint tenancy or tenancy in common; but this leaves them to the application of the ordinary rules of the common law as to the construction of the instrument which they executed. But, as if corroborating this view of the case, it is to be noted that the draftsman of the deed, in providing for the separate estate of the life tenant, Mary Elizabeth Seitz, a married woman, and the wife of George Seitz, was very careful to use apt words—*"for her sole and separate use, and for that purpose only."*

The cases of *Galbraith* v. *Galbraith,* 3 S. &. R. 391, and *Bambaugh* v. *Bambaugh,* 11 S. & R. 191, are cited as holding a contrary view to that herein expressed. But in the first of those cases, the grant was "to them (the grantees), or *any* of them, their or any of their heirs," and the court construed the word *any,* which otherwise perhaps would have been absurd and meaningless, to be the equivalent of the word *each,* thereby creating a tenancy in common; and in the second, the case of *Bambaugh* v. *Bambaugh,* the *habendum* clause contained the words, "to their and *each* of their heirs . and assigns," which the court construed as overcoming the result of the technical words in the premises which would have created a joint tenancy. It is evident that these words could have had no force or effect except upon the implication of a tenancy in common. We are unable to see that they resemble the present case in any respect.

The case of *Barribeau* v. *Brandt,* 17 How. 43, is also cited in the same connection. But the deed construed in that case does not appear in the report of the case; and a careful reading of the case would indicate that the joint estate, even if such it was, had been severed by the action of the joint tenants themselves. This case can not be regarded as an authority against the position which we have taken.

It is unnecessary to discuss at much length the third consideration heretofore indicated, namely, the fact that the original joint interest recited by the deed to have been in the grantor, Joseph Franklin Seitz, and his two brothers, John F. Seitz and Charles Leo Seitz, was severed, as to the grantor on the one hand and the grantees on the other, by the very execution of the deed, and no reason appears why there should not have been a severance between the grantees also. The views of the parties are not disclosed to us except by the deed itself; and there is no inconsistency, legal or equitable, in the severance of his interest by one brother and the continuance of the others in a joint tenancy. Even after the execution of the deed it was competent for the two

grantees to sever their interests, if they thought proper so to do. If their failure so to do was in consequence of their ignorance of their respective rights under the deed, that is a consideration of which we can not here take cognizance.

Entertaining the view of the law which we have here expressed, we are compelled to *reverse the decree of the court below, with costs; and to remand the cause to that court, with directions to dismiss the bill of complaint.*