### LIPPINCOTT *v.* MITCHELL.

A conveyance of lands in Alabama to a married woman, "to have and to hold to the sole and proper use, benefit, and behoof of her, her heirs and assigns for ever," vests in her, under the laws of that State, a statutory separate estate; and a mortgage of the lands, executed by her and her husband to secure the payment of his debts, is void.

APPEAL from the Circuit Court of the United States for the Southern District of Alabama.

The case is stated in the opinion of the court.

*Mr. J. Hubley Ashton* for the appellant.

*Mr. Percy Walker* for the appellee.

Mr. Justice Swayne delivered the opinion of the court.

This case is brought here by appeal from the Circuit Court of the United States for the Southern District of Alabama. It depends for its determination upon a branch of the local law of real property. The question involved relates to the separate estates of married women. The facts are undisputed. The premises in question were conveyed to the appellee, Nannie C. Mitchell, by deed duly executed, bearing date on the nineteenth day of March, 1868.

On the 17th of February, 1869, Nannie C. Mitchell and J. C. Mitchell, her husband, mortgaged the premises to the appellants, J. B. Lippincott & Company, to secure the payment of certain liabilities therein described. The instrument contained a power of sale. The mortgagees advertised the property to be sold pursuant to the power. She thereupon filed this bill to enjoin the sale, upon the ground that under the law of Alabama she was incompetent thus to incumber the property; and that the mortgage was, therefore, void.

The Circuit Court decreed a perpetual injunction. The mortgagees thereupon removed the case to this court by appeal.

The Code of Alabama, art. 3, sect. 2371, declares that " all the property of the wife, held by her previous to the marriage, or which she may become entitled to after the marriage in any manner, is the separate property of the wife, and is not subject to the payment of the debts of the husband."

Prior to the judgment of the Supreme Court of the State in 1869, in *Molton* v. *Martin*, 43 Ala. 651, it was the settled law in that State that there were two distinct kinds of separate estates, — one designated equitable, and the other statutory. With respect to the former, the rule was that it was wholly independent of the statute. It was as if the statute did not exist. The rights of the husband were excluded, but the powers of the wife might be defined and limited by the instrument conveying it as was deemed proper by those concerned. If no limitation was imposed, they were regulated by the general rules of equity jurisprudence upon the subject. According to those rules, where there was no restriction, she was in effect a *feme sole* as to such property. She could incumber or dispose of it at pleasure. The income belonged to her, and she was not bound to contrib-

ute out of it any thing for the support or benefit of the husband's family. *M. Church* v. *Jacques*, 3 Johns. (N. Y.) Ch. 77; *Gun* v. *Samuels*, 33 Ala. 201; 2 Story's Eq., sects. 1392, 1393.

She stood, with respect to such property, in the same relation to the husband as if it belonged to a stranger. She had, therefore, the same capacity as any other person who might be the owner to mortgage it for his debts. The creation of such conventional estates was sustained, because there was nothing in them contrary to law or public policy. The parties concerned were, therefore, permitted to contract as they pleased.

But where no such separate estate existed with respect to property owned by the wife at the time of the marriage, or acquired subsequently, the statute interposed and created a separate estate in her behalf, with such incidents and attributes as the legislature saw fit to prescribe. Among these were the right of the husband to control the property and receive the income without accounting for it, and the liability of the estate for articles of support and comfort procured for the use of the family suitable to its condition in life, for which the husband would have been liable according to the common law. If he survived her, and she died intestate, he was entitled, as distributee, to one-half of her personalty, and to the use and enjoyment of her real estate for life. If she survived him, the value of her separate estate was deducted from her distributive share of his personalty and her dower. But she could not mortgage the estate for her husband's benefit, and such mortgages were of no validity.

The judgment of the court in *Molton* v. *Martin, supra*, and in *Glen* v. *Glen*, 47 Ala. 204, and in *Dennichand* v. *Berry*, 48 id. 591, the two latter following and controlled by the former, abolished the distinction between the two classes of separate estates, and brought all such equitable estates, except where the legal title was vested in a trustee, within the statute.

It followed as a consequence that the wife could no more mortgage an equitable than a statutory separate estate for the husband's benefit, and that all such mortgages were void, by reason of her disability in both cases.

Such was the state of the law when the present case was

decided by the Circuit Court. The conclusion reached was inevitable, whether the separate estate of the wife belonged to one class or the other, the question then being immaterial in the jurisprudence of the State. The result, as to the point under consideration, was necessarily the same in both cases.

The subject again came under the consideration of the Supreme Court of the State in 1875, in *Short* v. *Battle*, 52 Ala. 456. It was ably and elaborately examined. The court unanimously overruled the cases of *Molton* v. *Martin*, *Glen* v. *Glen*, and *Dennichand* v. *Berry*. The pre-existing state of the law was re-asserted and re-established. The statute was construed as it was construed before *Molton* v. *Martin* and the subsequent cases in harmony with that case were determined.

This construction is a rule of property of the State, and we are as much bound by it as if it were a part of the statute. It is our duty to apply the law of the State as if we were sitting there as a local court, and this case were before us as such a tribunal. *Leffingwell* v. *Warren*, 2 Black, 579; *Olcott* v. *Bynum*, 17 Wall. 44.

We are thus brought to the examination of the question whether the estate to which this litigation relates belongs to the equitable or to the statutory class. If to the latter, the decree of the Circuit Court is correct; if to the former, it must be reversed.

No particular words or phrases are necessary to create an equitable separate estate. The court will examine the whole instrument, and look rather to the intent manifested than to the language employed. The creative intent must clearly appear. Doubts are resolved in favor of the husband's marital rights. Bish. Law of Married Women, sect. 824. In *Short* v. *Battle*, *supra*, the Supreme Court of the State laid down this rule: " Where the intent to exclude the marital rights of the husband is doubtful or equivocal, or rests on speculation, the statute intervenes, and fixes the character of the estate as the separate statutory estate of the wife."

The deed here in question purports on its face to be executed by " Huriosco Austill, trustee for Mrs. Mary A. Marshall," recites that the sale and conveyance were made pursuant to her written request, and then proceeds : —

"Now, know all men by these presents, that I, Huriosco Austill, as trustee, as aforesaid, for and in consideration of the sum of $4,600, lawful money of the United States, to me in hand paid by Nannie C. Mitchell at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, and the said Nannie C. Mitchell, her heirs, executors, and administrators for ever, released and discharged from the same, have granted, bargained, sold, aliened, remised, released, enfeoffed, conveyed, and confirmed, and by these presents do grant, bargain, sell, alien, remise, release, enfeoff, convey, and confirm, to the said Nannie C. Mitchell, her heirs and assigns for ever, all and singular that certain lot of land situate, lying, and being in the city of Mobile, and described as follows, to wit:—

.    .    .    .    .    .    .    .    .    .    .

"Together with the tenements, hereditaments, rights, members, privileges, and appurtenances unto the above-mentioned premises belonging or in any way appertaining: to have and to hold the above-granted and described premises with the appurtenances unto the said Nannie C. Mitchell, her heirs and assigns, to the sole and proper use, benefit, and behoof of the said Nannie C. Mitchell, her heirs and assigns for ever."

If it were intended by this deed to give the wife a separate estate, it is remarkable that in the mass of redundant verbiage employed no words clearly apt for that purpose are to be found. It is remarkable, if such an intent existed, that the phrase, "for her separate use," or "for her exclusive use," or "free from the control of her present or any future husband," or some equivalent for one of them, was not inserted. The omission can only be accounted for upon the hypothesis that the idea of a separate estate was not in the mind of either of the parties, and that hence no instruction upon the subject was given to the draftsman of the deed. There is nothing in the record to warrant the belief that the purchase and conveyance were not intended to be such a transaction in the ordinary way, without securing to the grantee any special rights touching the property, or any right other than that of the ownership in fee-simple.

The only part of the deed which gives a shadow of support to the proposition of the appellants is the language of the *habendum*.

The same language is to be found in many precedents in ᴏooks of forms, where, certainly, there was no purpose to create a separate estate.   Thus, in Oliver on Conveyancing, an American work, in the form of a deed by an administrator, p. 290, the *habendum* is, " To have and to hold the same to the said J. C. and W. W., their heirs and assigns, to their sole use and behoof for ever."   So, in the form of a deed to a corpora-ᴛion, id. 279, " To have and to hold the same, with the appur-tenances thereof, to the said corporation and their assigns, to their sole use and behoof for ever."   Instances to the same effect in other like works might be largely multiplied.

Such was also the ancient English form of the *habendum*, except that the term " only " was used instead of " sole."

In Lilly's Practical Conveyancer, published in 1719, in the form of a release in fee, the *habendum* is, " To have and to hold the said," &c., " to the only proper use and behoof of the said C. C., his heirs and assigns for ever."   And such is the modern English form.   Thus, in the form of a deed of feoffment, in 4 Blythewood, 130, the *habendum* is, " To have and to hold the said close," &c., " to the only proper use of the said [feoffee], his heirs and assigns for ever."

We have examined the cases upon the subject, referred to by the learned counsel for the appellants, and many others, both the English and American.   Some of them go to a very ex-treme length in one direction, and some in the other.   Not a few of them are in irreconcilable conflict.   To examine and discuss them in detail would unnecessarily prolong this opinion, and could serve no useful purpose.   We therefore forbear to remark further in regard to them.  .

Without the aid of the rule of doubt recognized by all the authorities upon the subject, we have no difficulty in coming to the conclusion that the deed of Austill cannot be held to have vested in the grantee a separate estate, or any other estate than a fee-simple.   When she executed the mortgage, she had, therefore, a statutory separate estate.   Hence the mortgage was void.                    *Decree affirmed.*

MR. JᴜSTICE STRONG dissented.