### YOCUM et al. v. PARKER et al.

(Circuit Court of Appeals, Eighth Circuit. November 11, 1904.)

No. 1,964.

1. WILLS—CONSTRUCTION OF DEVISE—ESTATE OF DEVISEE.

Rev. St. Mo. 1845, c. 32, § 5, provides that, where any conveyance or devise shall be made whereby the grantee or devisee shall become seised of such estate in lands as under the statute of entails would have been held an estate in fee tail, every such conveyance or devise shall vest an estate for life only in the grantee or devisee. Section 6 provides that where a remainder shall be limited to take effect on the death of any person without heirs, or heirs of his body, or without issue, "the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor." A will contained the following devise of land in Missouri: "To my beloved son, * * * my natural son, I bequeath absolutely [the land described], * * * with the express understanding and restriction, namely, that if my said son dies without legal issue, descendants of his, legitimate issue of his, said lands shall pass to" other persons named. Held that, construed as required by said section 6 of the statute, such will vested the son with the estate in fee simple, subject to be devested on the happening of a contingency definite in point of time, to wit, upon his death without living legitimate

issue, and that, since under such construction an estate tail would in no event have been created, section 5 of the statute had no application.

**2. SAME—STATUTORY PROVISIONS.**
  In the interpretation of a will resort should not be had to one part of a statute, to the exclusion of another which has a direct bearing upon the question, and by applying which both may be given effect in proper cases, and the statute rendered harmonious.

**3. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTRUCTION OF LOCAL STATUTES.**
  It is the settled rule that the courts of the United States will follow the decisions of the highest court of a state in the interpretation of its local statutes, and especially when they concern the descent and alienation of lands and the construction of wills and conveyances, and where there is a conflict of decision on such a matter the federal court will follow the latest, when no intervening contract rights are involved.

  [Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71, and Hill v. Hite, 29 C. C. A. 553.]

In Error to the Circuit Court of the United States for the Western District of Missouri.

For opinion below, see 130 Fed. 722.

An order was heretofore entered reversing the judgment of the Circuit Court and remanding this cause, with directions to dismiss unless by appropriate proceedings jurisdiction was made to appear. 130 Fed. 770. The grounds of the opinion were (a) that the requisite diversity of citizenship did not appear in the petition, it being merely averred that the two plaintiffs were, respectively, residents of Colorado and Idaho, and that defendants were citizens of Missouri; and (b) that, as the answer denied that the plaintiffs were even residents as averred, and also denied that the defendants themselves were citizens of Missouri, and as no evidence was introduced, the case having been determined upon defendants' motion for a judgment upon the pleadings, there was, within the doctrine of Roberts v. Lewis, 144 U. S. 653, 12 Sup. Ct. 781, 36 L. Ed. 579, no affirmative showing in the record of jurisdiction. Upon motion for rehearing it was satisfactorily shown that in the preparation of the transcript of the record of the Circuit Court an error had been made in the copy of the petition, and that in fact it had been affirmatively and specifically averred therein that the plaintiffs were, respectively, citizens of the states of which they were residents. The record in this court was therefore allowed to be corrected. This disposed of the principal ground upon which the action of this court proceeded. Upon reconsideration of the other it is considered that, as the motion for judgment upon the pleadings was made by the defendants, they should be held to have admitted, for the purposes of such motion, that all of the well-pleaded averments of the plaintiffs' petition and replication were true. Therefore the application of the rule of Roberts v. Lewis, supra, to the situation presented in this case, is not adhered to. This renders necessary a consideration of the merits of the controversy.

The action was one in ejectment, brought by Oscar M. Yocum and John W. Yocum against J. W. Parker, Andrew B. Siler, and Susan Siler, to recover the possession of a tract of land in Platte county, Mo. Both plaintiffs and defendants claim title through George W. Yocum, who died seised of the premises in 1854, leaving a will, the fifth paragraph of which contains all that is material in this case. The paragraph, somewhat abridged, is as follows: "To my beloved son, William Franklin Yocum, my natural son, I bequeath absolutely" a tract of land embracing that in controversy, "with the express understanding and restriction, namely, that if my said son dies without legal issue, descendants of his, legitimate issue of his, said land shall pass to" certain collateral relatives, who were named. In 1858 William Franklin Yocum, the first taker under the will, conveyed the property by warranty deed to one Norris, and by mesne conveyances his title became vested in Susan Siler, one of the defendants, under whom the other defendants hold. William Franklin Yocum died in 1892. The plaintiffs are his sons, born in lawful wedlock, and are now

his only surviving issue. In 1897 a prior action in ejectment between the same parties or their privies, and for the recovery of the possession of the same premises, was brought in a state court of Missouri. It resulted in a judgment for Susan Siler and her tenants, and the judgment was affirmed by the Supreme Court of Missouri. Yocum v. Siler, 160 Mo. 281, 61 S. W. 208. Upon this state of facts the Circuit Court rendered judgment for the defendants.

Vinton Pike and J. B. Shackelford, for plaintiffs in error.

J. W. Coburn and B. R. Vineyard, for defendants in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The land in controversy was devised to William Franklin Yocum absolutely, but with the restriction that, if he died without legitimate issue of his body, it should pass to collateral relatives of the testator. The plaintiffs claim title under the will as the sons, lawful issue, of William Franklin Yocum. The defendants claim under a warranty deed made by him in his lifetime. The plaintiffs contend that through the application to the devise of a section of a Missouri statute, to which further reference will presently be made, their father took but a life estate, and the fee simple passed to them, and that therefore the title conveyed by his deed terminated at his death. The defendants contend that the estate devised to William Franklin Yocum was a determinable fee (Britton v. Thornton, 112 U. S. 526, 532, 5 Sup. Ct. 291, 28 L. Ed. 816), the contingency being the nonsurvival of legitimate issue of his body, and that by the birth and survival of the plaintiffs, his sons, the title, which was theretofore defeasible, became absolute, and its confirmation inured to the benefit of those who claimed under the warranty deed made in his lifetime. It is conceded that if William Franklin Yocum took under the will a life estate only, which was terminable at his death, the defendants' motion for judgment on the pleadings should have been overruled, and that, on the other hand, if his title became a fee-simple absolute, because of the failure of the condition which would have determined it, the defendants should prevail.

Under the laws of Missouri no particular form of words was necessary for the creation of an estate in fee simple. It is clear that William Franklin Yocum would have taken such an estate, were it not for the limiting words respecting a failure of issue, and particularly is this so because of the employment by the testator of the term "absolutely" in connection with the devise to him. But the testator added to this otherwise absolute devise the express provision that, if his said son died without legitimate issue of his body, the estate should then pass to certain collateral relatives. It will be observed, therefore, that the case turns upon the interpretation and effect to be given to the restricting or limiting clause. At the time the will took effect sections 5 and 6 of an act of the General Assembly of the state of Missouri, approved March 25, 1845, were in force. Rev. St. 1845, c. 32. They are as follows:

"Sec. 5. That from and after the passage of this act, where any conveyance or devise shall be made, whereby the grantee or devisee shall become seised

in law or equity, of such estate, in any lands or tenements, as under the statute of the thirteenth of Edward the First (called the statute of entails), would have been held an estate in fee tail, every such conveyance or devise shall vest an estate for life only in such grantee or devisee, who shall possess and have the same power over, and right in such premises, and no other, as a tenant for life thereof would have by law, and upon the death of such grantee or devisee, the said lands and tenements shall go and be vested in the children of such grantee or devisee, equally to be divided between them as tenants in common, in fee, and if there be only one child, then to that one, in fee, and if any child be dead, the part which would have come to him or her, shall go to his or her issue, and if there be no issue, then to his or her heirs.

"Sec. 6. Where a remainder in lands or tenements, goods or chattels, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor."

In the very act by which in 1816 the common law of England was adopted in Missouri there was a brief provision abolishing entails. Laws 1816, c. 260, § 2. It was repealed in 1825, and another of similar import enacted (1 Laws 1825, p. 216, § 4); and this was in turn displaced by section 5 above quoted. These various acts were dissimilar in respect of the language employed, but they were alike in that they transformed each estate upon which they operated into an estate for life in the first taker and a fee simple in the person or persons who had the first remainder. The provisions of section 6 above quoted appeared in the laws of Missouri for the first time in 1845.

Section 5 of the act of 1845 is applicable only when the devisee has "become seised" of such an estate as under St. 13 Edw. I would have been an estate in fee tail. No other character of estate is within the scope of its provisions. If William Franklin Yocum "became seised" of an estate which would have been an entail under the English statute, then by force of section 5 it became an estate for life in him, with remainder in fee to the plaintiffs; but, if he did not "become seised" of such an estate, the section referred to is inapplicable, and the plaintiffs would take nothing. The primary inquiry, therefore, is, what was the estate of which William Franklin Yocum became seised? The answer should be sought in the legal significance of the language with which the devise was clothed. In a consideration of this matter other legislative provisions which have a direct bearing should not be ignored. All pertinent parts of the Missouri laws necessarily enter into, qualify, and fix the character of an estate of which a devisee of lands in that jurisdiction becomes seised under the provisions of a will. Section 5 only affects those estates which, were it not in existence, would be estates tail under St. 13 Edw. I. It leaves wholly free for application all other relevant statutory provisions, and this for the reason that they constitute rules by which is determined the character of an estate devised. Turning, now, to section 6 of the act of 1845, we find that it provides that in cases of the precise character of the one before us the words "heirs" or "issue" shall be construed to mean heirs or issue living at the death of the person named as ancestor. Applying this statutory interpretation to the paragraph of the will under consideration, it would then contain a devise of

land to William Franklin Yocum in fee, upon the condition, however, that if he should die leaving, at the time of his death, no surviving legitimate issue of his body, then it should pass to collateral relatives. This would make definite in point of time the contingency which would otherwise have been indefinite and uncertain. The survival of issue would not be an indefinite one, but would necessarily be determinable at the time of the death of the first taker. It is well settled that an estate in fee tail under St. 13 Edw. I could not be created by the force of such language. It was observed in Abbott v. Essex Company, 18 How. 202, 213, 15 L. Ed. 352, that the rule relating to estates tail "has never been construed, either in England or this country, to include cases where the title of the first taker is a fee simple and the contingency is definite." Justice Curtis, who decided this case at the circuit, said:

"If the first taker was to have a fee simple, and the estate is given over on a definite failure of issue—that is to say, in this case, a failure at the decease of the first taker—then the limitation over may take effect as an executory devise, because the contingency is determinable within those reasonable limits established by law to prevent perpetuities. This has been the law since the case of Pells v. Brown, Cro. Jac. 590." Abbott v. Essex Co., 2 Curt. 126, Fed. Cas. No. 11.

In Underhill on the Law of Wills, § 650, it is said that the doctrine of estates tail—

"Has no application whatever where an estate is a fee simple, with a limitation over upon a failure of issue, and it appears from the will itself, or where the common-law rule is modified by statute, that the failure of issue referred to is the failure of issue living at the death of the first taker."

Suppose, then, that at the time the will of George W. Yocum took effect section 5 had never been enacted, or that, having been enacted, it had been repealed, and that there was existing no statutory or other obstacle to the creation of estates tail in Missouri save that found in section 6, what would have been the estate devised by the fifth paragraph of the will? It would seem that in such case there could be no escape from the conclusion that section 6 was applicable; that it prevented the creation of an estate tail; that William Franklin Yocum by virtue of its provisions would take a fee simple, subject to devestment by the failure of issue at the time of his death; and that the collateral relatives of the testator would take an executory devise limited upon such contingency. Thus is presented a condition which determines the inapplicability of section 5. It cannot reasonably be said that the purpose of that section was the creation of an estate tail which otherwise was not one, merely that it might in turn demolish it. Its activity arose only when, under other rules and other laws, an estate tail existed —when some one had "become seised" of such an estate. A course of reasoning somewhat similar to this was adopted by Justice Curtis (Abbott v. Essex Co., supra) in considering the rule laid down by Lord Hale in Purefroy v. Rogers, 2 Saund. 388, for determining whether a limitation over was an executory devise or a contingent remainder. He said:

"But this rule does not operate until it is ascertained what the particular estate is and that it is capable of supporting a contingent remainder. I do

not understand it to be a rule of construction to be used in determining what particular estate the testator intended to devise, but a rule of law which determines the kind of estate which must be deemed to be limited over after the particular estate intended to be devised has been ascertained."

The plaintiffs contend that the design of section 6 was not to destroy estates tail, as that was accomplished by section 5, but that, on the contrary, it was solely to give validity to a certain class of estates limited upon a failure of issue, by making the contingency upon which they depended a definite one, and thus obviate the objection that they would otherwise be violative of the rule against perpetuities. At common law an executory devise limited upon a general or indefinite failure of issue was void. But it was not so of such a devise depending upon the failure of issue at the time of the death of the first taker, for in such case it would be known at that precise time, and within the limit of the rule against perpetuities, whether or not the first devisee left issue surviving him. 2 Washburn on Real Property, 758 et seq.; Sears v. Russell, 8 Gray, 86; Chism's Adm'r v. Williams, 29 Mo. 288; Lockridge v. Mace, 109 Mo. 167, 18 S. W. 1145. Plaintiffs say that section 6 was enacted to meet this condition of the common law, and that it performed no other office than to validate limitations upon a failure of "heirs" or "issue," by declaring that those words shall mean heirs or issue living at the death of the ancestor. But it is not clear that section 6 was at all necessary to secure this particular result, nor that if, in its absence, the language of section 5 were read into those devises which would then be within its scope, the same object would not have been attained which plaintiffs claim was the peculiar and exclusive office of section 6. Daniel v. Whartenby, 17 Wall. 639, 21 L. Ed. 661; Wead v. Gray, 8 Mo. App. 515, 520; Morgan v. Morgan, 5 Day, 517; Daley v. Koons, 90 Pa. 246.

In the interpretation of the will, resort should not be had to one part of the statute to the exclusion of another which has a direct bearing upon the question. A harmony should be established between them, if it may be fairly done. Such an adjustment is called for by the elementary rules of interpretation, whether we treat the sections as different statutes in pari materia or as parts of the same statute relating to the same subject-matter. If we apply section 6 to the will according to the plain import of its terms, giving to the words their legal significance, a result would be reached which would be decisive of this controversy, but which would, at the same time, leave room for the application of the preceding section to other cases. Nor would this be in any true sense a repeal of section 5. It would be merely a narrowing of the ground which it covers, made necessary by the plain letter of other provisions of the law. The conclusion which we have reached is that section 6 of the act of 1845 rules the paragraph of the will under consideration. The result is that William Franklin Yocum took an estate in fee simple, subject to its devestment in the event that he left no legitimate issue, but that, having left such issue, his title became an absolute one, which by a chain of conveyances was ultimately vested in the defendant Susan Siler.

In Yocum v. Siler, 160 Mo. 281, 61 S. W. 208, the Supreme Court of that state reached the same result in a controversy between substantially the same parties, over the same property, and involving the interpretation of the same paragraph of the will of George W. Yocum; and the foregoing considerations constitute the principal ground upon which the decision of that court was based. It is claimed, however, that there is in that case a complete departure from the rule announced in earlier decisions of the same court, and that it is not to be considered as binding in this jurisdiction. The earlier cases relied upon by the plaintiffs are Farrar v. Christy, 24 Mo. 453, Harbison v. Swan, 58 Mo. 147, Thompson v. Craig, 64 Mo. 312, and Cross v. Hoch, 149 Mo. 325, 50 S. W. 786. The deed which was construed in Farrar v. Christy was executed prior to the passage of the act of 1845 and consequently before the provisions of section 6 became embodied in the laws of that state. Harbison v. Swan was decided upon the authority of Farrar v. Christy. The same may be said of Thompson v. Craig, but it is difficult to reconcile the doctrine there announced with that of the later case of Prosser v. Hardesty, 101 Mo. 593, 14 S. W. 628. It may be observed in passing that in none of these cases did the learned court attach any importance to the use of the word "survivor" in the limitation of an estate over to the survivor of two grantees or devisees. It appears to have been at an early day quite generally determined, particularly in this country, that the employment of that term under such circumstances indicated a definite failure of issue at the death of the first taker, and therefore defeated the creation of an estate tail. Cross v. Hoch is not in conflict with Yocum v. Siler. The peculiar structure of the will involved in that case enabled the court to ascertain very satisfactorily the intention of the testator and to give effect to it, although perhaps the technical meaning of some words therein was modified to secure that result. There was no consideration of the doctrine of entails and the effect thereon of the Missouri laws. Moreover, the will was executed and took effect prior to the passage of the act of 1845.

An attentive examination of these older cases discloses the fact that in none of them was there notice of section 6 of the act of 1845, or any consideration of its effect in determining whether a devisee became seised of an estate tail, so as to permit of the operation of section 5. But, notwithstanding what has been said, we should recognize the existence of a conflict between Harbison v. Swan and Thompson v. Craig and the case of Yocum v. Siler. If the doctrine of the latter had been applied in the earlier cases, a different result would have ensued. What, then, should be done? The principle is firmly established that the courts of the United States will follow the decisions of the highest judicial tribunal of a state in the interpretation of its local statutes, and especially when they concern the descent and alienation of lands and the construction of wills and conveyances. Warburton v. White, 176 U. S. 484, 496, 20 Sup. Ct. 404, 44 L. Ed. 555; De Vaughn v. Hutchinson, 165 U. S. 566, 17 Sup. Ct. 461, 41 L. Ed. 827. This has been the rule since the time of Pollard v. Dwight, 4 Cranch, 421, 2 L. Ed. 666, and it

has since been announced in a multitude of cases. The decisions of the highest court of a state upon such questions are as much a part of the statute law as the enactments of the Legislature, and are equally binding upon the federal tribunals. Thus in Van Rensselaer v. Kearney, 11 How. 297, 318, 13 L. Ed. 703, the Supreme Court adopted, without question, the interpretation by the highest judicial authority of New York of a statute of that state which abolished estates tail and converted them into absolute fees.

It is also the general rule in such cases that, where there is a conflict in the decisions of the state court, the latest will be followed by the federal courts. It was held by the Supreme Court in Green v. Neal, 6 Pet. 291, 8 L. Ed. 402, that, having once followed the doctrine of some earlier decisions of the state court, it would afterwards follow a subsequent reversal thereof. In King v. Wilson, 1 Dill. 556, Fed. Cas. No. 7,810, the constitutionality of an Iowa law was involved. There had been a long line of decisions of the Supreme Court of that state in which it had been held that legislation of that character was forbidden by the state Constitution, but there was a recent decision of the same court announcing a contrary doctrine. Although, as Chief Justice of the state court, he had delivered the opinion in one of the earlier cases, and disapproved of the last decision, Judge Dillon, then Circuit Judge, met the situation in this way:

"Upon the best reflection I have been able to give the matter I have failed to persuade myself that I would be justified in disregarding and refusing to follow the latest decision of the Supreme Court. The question, it will be observed, relates solely to the validity of the statute under the state Constitution, and it is this law which the bill seeks to have nullified by the federal court. Now, where questions arising in the federal courts depend upon state statutes, these courts sit in the state to administer state laws, and these laws are expressly made rules of decision therein. Overruled decisions, how sound soever in principle, are nugatory in law. If the federal courts should follow overruled decisions because they believed them right, the result would be the intolerable mischief that would flow from the consequent confusion of rights, and the conflict of opinion leading to conflict of jurisdiction. A party would have a title in the one court and none in the other. Moreover, the federal courts might, by disregarding the adjudications of the state court, set up and support in the state a domestic policy repugnant to that recognized or established by the state court."

In Lippincott v. Mitchell, 94 U. S. 767, 24 L. Ed. 315, an old rule in Alabama relating to the power of a married woman over her property had been overturned by some decisions of the Supreme Court of that state. The controlling authority of these decisions was recognized by the Circuit Court, but while the cause was pending on appeal in the Supreme Court, the state court of last resort overruled the preceding decisions and re-established the first rule. In referring to the last decision the Supreme Court said:

"This construction is a rule of property of the state, and we are as much bound by it as if it were a part of the statute. It is our duty to apply the law of the state, as if we were sitting there as a local court, and this case were before us as such a tribunal."

See, also, Wade v. Travis County, 174 U. S. 499, 508, 19 Sup. Ct. 715, 43 L. Ed. 1060; Water Power Co. v. Water Commissioners,

168 U. S. 349, 366, 18 Sup. Ct. 157, 42 L. Ed. 497; Leffingwell v. Warren, 2 Black, 599, 603, 17 L. Ed. 261; Mitchell v. Lippincott, 2 Woods, 467, Fed. Cas. No. 9,665.

A well-defined distinction exists, however, between the establishment of a rule of property by means of the interpretation by the highest court of a state of the general principles of the common law, and the construction by such a court of a local statute. Ryan v. Staples, 76 Fed. 721, 727, 23 C. C. A. 541. In the former case a settled course of decisions of the state court is generally requisite. A single decision, though always persuasive, may not be controlling.

The cases upon which the plaintiffs rely are not in conflict with the foregoing views. Most of them relate to contract rights which had become vested, either in conformity with the then prevailing decisions of the state courts, or in the absence of any decision whatever. The rights of the parties to this action are not founded upon contract. No decisive question of general jurisprudence and no question of commercial or mercantile law is involved. The Constitution, laws, and treaties of the United States have no application. The case turns upon the construction of the statutes of Missouri relating to the devise of lands within its borders—a subject-matter peculiarly of local concern. In Barber v. Railway, 166 U. S. 83, 17 Sup. Ct. 488, 41 L. Ed. 925, no state statute was construed or applied. In Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, the question was of the liability of a pledgee of stock for the debts of the corporation, and at the time the status of the parties was fixed there was no decision of the highest court of the state upon the subject.

Much has been said about the intention of the testator and the doctrine that such intention is the dominant factor in the interpretation of the will. We recognize the controlling influence of the rule, but it is of no assistance to a conclusion contrary to that which we have reached. The testator employed technical phrases to which the Legislature of Missouri had attached a specific meaning. He did not add any qualifying or explanatory expressions indicative of a contrary intent. And when he devised the land in controversy to the one nearest to him in affection, his son, not for life, but absolutely, upon a condition expressed in his will, we cannot say that he did not intend that the devisee should own the property absolutely with full power of disposition, the condition having been fulfilled.

The judgment of the Circuit Court will be affirmed.