No. 22,618.

JAMES W. PEARSON, SUSAN LUE, and CELIA B. PATTON, *Appellants*, v. RAYMOND ORCUTT, REBECCA A. ORCUTT, and SARAH PRUITT, *Appellees*.

OPINION DENYING A REHEARING.

SYLLABUS BY THE COURT.

1. DEED—*Want of Consideration—A Gift.* A contention that a deed was based upon a valuable consideration is held to be untenable because of a specific finding against it.

2. SAME—*Former Decision Distinguished.* A decision contrary to that reached is held not to be required by former rulings.

3. SAME—*Interpretation of Will—Effect of Former Decisions of This Court.* The fact that a will was drawn and the testator died after a decision had been made by this court announcing a rule of interpretation applicable thereto, and before the rendition of another decision assumed to be in conflict therewith, is not a sufficient reason for following the rule first announced rather than the later one. If the second decision is regarded as overruling the first, the accepted theory is

that the first was wrong—not that a change had taken place in the law. The earlier rendition of an erroneous decision could not affect the matter unless in a situation where it might have a bearing upon the testator's actual intention.

Appeal from Shawnee district court, division No. 1; ROBERT D. GARVER, judge. Opinion denying a rehearing filed July 10, 1920. (For original opinion of reversal see 106 Kan. 610, 189 Pac. 160.)

*Z. T. Hazen, Otis E. Hungate,* and *Paul H. Heinz,* all of Topeka, for the appellants.

*J. J. Schenck,* and *Tinkham Veale,* both of Topeka, for the appellees.

The opinion of the court was delivered by

MASON, J.: In this case (106 Kan. 610, 189 Pac. 160) this court decided that the will involved gave to the widow of the testator a life interest in his realty—a farm—coupled with a power of disposition which was not unlimited and did not enable her to make an outright gift of the entire property to the prejudice of the remaindermen.

1. In a motion for a rehearing it is argued that the deed to the farm was not a gift, although no money was actually paid at the time of its execution, but was made in consideration of a promise that the grantee—her grandson—would support her during the remainder of her life. The trial court found that there was no consideration paid by the grantee to the grantor, and that the transaction was treated and considered as a gift. Whatever doubt on the matter might have been left by the evidence was resolved by this finding, which determines the voluntary character of the conveyance.

2. It is also urged that the conclusion reached is in conflict with a number of our own decisions, as well as those of other jurisdictions. While for reasons stated in the original opinion we deem it inexpedient to enter into any very extended review of the authorities, some of those most strongly pressed will be briefly referred to.

In *Greenwalt v. Keller,* 75 Kan. 578, 90 Pac. 233, the portion of the will preceding that indicating the final disposition of the property read as follows: "I wish my wife, Eliza Bunt, to

have all my property of every kind that I may own at my death, to have for her own use and benefit while she may live. And at her death all property that may be left by her, first I want Mary Greenwalt or her heirs to have what I owe her." The widow, not being able otherwise to pay the debt to Mary Greenwalt, which amounted to $300, in satisfaction thereof made a conveyance of real estate which had been owned by her husband at the time of his death. It was held that although no power of disposition was expressly given it was to be inferred from the fact that the other persons named were to receive only the property that might be "left by her," and that the deed was valid. The question there presented and determined was whether or not a power of disposition was given by the will— not as to the scope of the power if it existed. *Otis v. Otis,* 104 Kan. 88, 177 Pac. 520, was a quite similar case, one party contending that the widow took a fee, the other that she took a life estate with power of disposition, the decision being in favor of the latter contention.

In *Postlethwaite v. Edson,* 98 Kan. 444, 155 Pac. 802, a will executed by a husband and wife read as follows: "They and each of them do hereby devise and bequeath to the other surviving, all the estate . . . of which the one dying first shall be seized, or have an estate, claim or interest therein, and to be owned and disposed of by the survivor as he or she may desire, and that upon the death of the survivor, all the estate of the survivor not disposed of by such survivor, is hereby devised and bequeathed to their children . . . in equal parts." (Syl.) After the death of the wife, preceded by that of the husband, an attempt was made to subject real property which they had occupied as a homestead, the title being in the husband, and which had passed into the hands of their children, to the payment of a judgment against him. The children claimed that under the will the fee had passed to their mother, and the property had thereby been freed from the lien. The creditor claimed that their mother on the death of her husband took merely a life estate, although accompanied by a full power of disposition, the remainder vesting in the children, who acquired the property subject to the lien of the judgment. The question in dispute was whether or not the widow took a fee, the alternative theory being that she took a life estate with a

power of disposition. There was no controversy over the extent of that power. It was spoken of in the opinion as being "full," the context indicating the meaning to be that, however absolute it might have been, it did not convert the widow's title into a fee. There was no occasion to consider whether the widow might have attempted some disposition of the property which was beyond the power conferred, for no such issue was raised.

In *Brown v. Brown,* 101 Kan. 335, 166 Pac. 499, a husband and wife made a joint will by which the survivor was to take a life interest in the property of the other with the right to dispose of any part of it, the estate to be distributed after an interval to their bodily heirs. The widow of a deceased son of the testators claimed an interest therein on the theory that her husband had acquired a title which descended to her. Her claim was denied, and the opinion, in describing the effect of the will, mentioned that on the death of one of the testators the property was to vest in the other with full power of disposition. As in the case just discussed, no question was raised as to whether the power was literally absolute and unlimited.

It is urged that the decision in the present case is not consistent with that in *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621, but we discover no inconsistency in principle. There the testator did not expressly confer upon his widow a right to sell or dispose of the property he left, but for reasons stated in the opinion we concluded that such an intention on his part was to be gathered from a consideration of the entire will. Here the testator did not expressly limit the power of disposition he conferred upon his widow, but, for reasons stated in the original opinion, we conclude that such an intention was clearly inferrable from his language, viewed in the light of the surrounding circumstances.

We freely concede that many cases are to be found having at least an apparent tendency against the conclusion we have reached. Some of them are influenced by rules of construction which we do not accept, and some are distinguishable upon the facts. We find no case favorable to the view we have taken that is so absolutely in point that if conceded to be sound it would be necessarily controlling. *Johnson et al. v. Johnson,* 51 Ohio St. 446, would probably meet that descrip-

tion were it not for the fact that in providing for the distribution of the property undisposed of by the widow the will described it as that remaining "unconsumed" at her death. The court held that, although she was expressly empowered to dispose of the property as she might think proper, she was not authorized to give it away. The use of the word "unconsumed" was of course an aid in reaching that conclusion, but only by virtue of an inference to be drawn from it. It was important only as it was of assistance in determining the real meaning of the testator, which his language did not indicate with strict accuracy. In *Terry et al. v. Wiggins et al.,* 47 N. Y. 512, a grant of power to a widow to dispose of property if she should deem it expedient was held to be limited, because it was devised to her "for her own personal and independent use and maintenance." The decision was obviously correct, but it rested only on an inference.

In the present case the devise to the widow was accompanied by a direction that she should immediately enter upon the possession of the property (a provision which carries some implications of a purpose to provide for her support), with power to sell and dispose of it in any way she might desire, without the intervention of any court, during her natural life. Any property that remained at her death, after the payment of $50 to her grandson, was to be distributed among her five children. We regard it as entirely clear that the devise was intended as a provision for the maintenance and comfort of the widow—as much so as though it had been expressed to be for her use and benefit—and that some limitation on her power of disposal was intended. In that situation the inference has been drawn that the body of the estate could be diminished so far as might be necessary to the support of the widow. (*West v. West,* 106 Kan. 157, 159, 186 Pac. 1004.) We do not hold that in the present case the widow could dispose of the property only where it should be necessary or convenient for her support, unless that term should be so extended as to cover any expenditure she might see fit to make for her own benefit or pleasure. The testator plainly did not intend, however, that she should have any power to determine who should have the farm after her death, if it had not been previously disposed of. If she had undertaken to give the

farm to her grandson by will instead of by deed the attempt would of course have been futile. She made the deed at the age of eighty-four, after being in ill health for some months. She gave as a reason for determining to make it, that her grandson was the only one who stayed with her and did for her and she thought he was the only one to leave it to. To give effect to the deed would be to allow the manifest purpose of the testator to be frustrated—to permit the grandson, to whom he had alloted but $50, to possess the entire estate which he designed to have distributed among the children when his wife should be through with it. We think it clear that this method of disposing of the property was not one of those her husband intended to place within her power, and we derive this belief from the reading of the whole will in the light of the situation of the parties.

3. In the brief of the appellee it was contended that whatever interpretation might properly be placed upon the will if made at this time, it should be construed as authorizing the widow to give away the property because it was executed in 1911, and the testator died in 1912, when a different rule of construction prevailed from that now adopted—the rule declared in the cases of which *McNutt. v. McComb,* 61 Kan. 25, 58 Pac. 965, is typical. Inasmuch as the present case was held to be distinguishable from that, a discussion of this contention was regarded as unnecessary and no mention of it was made in the original opinion. In the motion for a rehearing the point is again pressed, but is clearly untenable. The argument in its support is based chiefly upon a recent decision of the United States circuit court of appeals for this circuit. (*Wells v. Brown,* 255 Fed. 852.) There one paragraph of a Kansas will gave all the testator's property to his mother. The succeeding paragraph expressed a wish and request that she should devise and bequeath to certain persons whatever of it remained at her death. Apparently it was assumed that if the rule of interpretation now followed by this court (that the real intention of the testator as gathered from all parts of the instrument should be given effect) were applied, the request as to the final disposition of the property must be treated as mandatory. The court held, however, that the rule of *McNutt v. McComb* should control, because the

rights of the devisee accrued before any qualification of the language of the opinion therein had been indicated by this court, and that therefore the testator's mother took an absolute estate in fee, the grant of title not being affected by any limitation attempted to be placed upon it in the succeeding paragraph.

It is a familiar fact that where two decisions of a state court of last resort respecting local law are in conflict, the Federal courts do not regard themselves as bound to follow the later expression to the prejudice of anyone whose rights (especially if contractual and presumptively affected by reliance on the earlier interpretation) accrued in the interval between them, but will exercise their own judgment, and ordinarily give effect to the original view of the state court. (Note, 40 L. R. A., n. s., 396.) Indeed, where there·is no conflict in the state decisions they will not necessarily be followed by the Federal courts with respect to rights that accrued prior to their rendition. (Same note, p. 397; *Kuhn v. Fairmont Coal Co.*, 215 U. S. 349.) The reasons given for this well-established practice have not been entirely uniform. The Wells-Brown case is perhaps exceptional in treating the overruling of a decision as an actual change in substantive law, as though made by the legislature. Moreover, it is apparently not in harmony with a former ruling of the same court, where the later of two conflicting interpretations by a state supreme court of local statutes relating to wills was followed to the disadvantage of a litigant whose rights had accrued in the meantime. (*Yocum v. Parker*, 134 Fed. 205.) The problems presented by this aspect of the matter, however, are purely those of Federal practice in which this court has but an academic interest, no question of constitutional law being involved.

Although a different theory at one time had a considerable vogue, we think there is now little dissent from the view, which at all events is that of this court, thus expressed in an opinion written by Mr. Justice Benson, wherein the subject is fully treated:

"Courts do not and cannot change the law by overruling or modifying former opinions. They only declare it by correcting an imperfect or erroneous view. The law itself remains the same, although interpre-

tations may have differed. [Citing cases.] An erroneous ruling may in some circumstances become the law of the particular case, but this will not prevent the court in another action from holding to the contrary. A person who is not a party or privy in the action cannot acquire a vested right in an erroneous decision made therein." (*Crigler v. Shepler*, 79 Kan. 834, 842, 101 Pac. 619.)

If it should appear that the wording of a will might have been influenced by a decision of the supreme court which was overruled after the death of the testator, the matter would doubtless be one to be considered in arriving at the actual purpose in his mind, but no such situation is here presented.

The motion for a rehearing is overruled.