## JACKSON v. HARRIS et al.
No. 236.

Circuit Court of Appeals, Tenth Circuit.
Aug. 11, 1930.

514

Eliot D. Turnage, of Muskogee, Okl. (Charles A. Chandler, of Muskogee, Okl., and Frank L. Warren and John B. Campbell, both of Holdenville, Okl., on the brief), for appellant.

V. R. Biggers, of Wewoka, Okl. (A. A. Criswell, J. Bart Aldridge, and Lynn Adams, both of Wewoka, Okl., for the Key Okla Oil Company, Jas. A. Veasey, L. G. Owen, and Walter Davison, all of Tulsa, Okl., for Carter Oil Company, and V. C. Mieher and R. Y. Stevenson, both of Tulsa, Okl., for Amerada Petroleum Corporation, on the brief), for appellees.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

Robert Simon brought this suit against the above named appellees to obtain a decree canceling certain instruments as clouds upon the title to the allotment of Mamon Cudjo, a freedman member of the Seminole tribe of Indians, and other lands, and quieting title to such lands in Simon. In such suit, the appellee, Douglas Jackson, filed a bill of intervention in which he set up a claim of title, by inheritance, to the allotment of Mamon Cudjo, and prayed that it be quieted in him as against the plaintiff, Simon, and the appellees. The Carter Oil Company, in its answer to the bill of intervention, alleged title to a certain oil and gas lease on a portion of the allotment of Mamon Cudjo through conveyances from the paternal half brothers and half sisters and a paternal niece of Mamon Cudjo. The Amerada Petroleum Corporation, in its answer and cross petition to the bill of intervention, alleged its title to a certain oil and gas lease on a portion of the allotment of Mamon Cudjo through conveyances from the paternal half brothers and half sisters and a paternal niece of Mamon Cudjo. Thereafter, Simon dismissed his bill. The cause was transferred to the law docket and a written stipulation was filed waiving trial by jury. The cause came on for hearing between the appellant and the appellees, Carter Oil Company and the Amerada Petroleum Corporation, upon an agreed statement of facts.

In such agreed statement of facts, it was stipulated that Mamon Cudjo was a freedman member of the Seminole tribe of Indians, enrolled as No. 2606; that he was allotted the Southeast Quarter of the Northeast Quarter of Section 34 and the North Half of the Southwest Quarter of the Northeast Quarter of Section 35, Township Eleven North, Range Six East; that Mamon Cudjo was the son of Tena Cudjo and Reynold Cudjo, both duly enrolled members of the Seminole Tribe; that Mamon Cudjo died in November, 1917, seized and possessed of the above land, having never married and leaving no wife, children or issue of children and no father and no mother; that he left surviving him Robert Cudjo, George Cudjo and John Cudjo, paternal half brothers, Pinchey Carolina and Minerva Sandridge, paternal half sisters, Ollie Grayson, the issue of a paternal half sister, and the appellant, a first cousin, being a son of a full sister of Tena Cudjo, the mother of Mamon Cudjo; that the half brothers and half sisters, above referred to, are the children of the father of Mamon Cudjo and of another woman, who was not related in any way to Tena Cudjo; that by mesne conveyances, the appellees acquired the interest of the above named half brothers and sisters and niece, as alleged in the answers of the Carter Oil Company and the Amerada Petroleum Corporation; that appellees do not claim under or through any conveyance executed by appellant's immediate ancestors; and that appellant is not and never has been in possession of such land.

The trial court found in favor of appellees, dismissed the petition of intervention and quieted title in the Carter Oil Company and the Amerada Petroleum Corporation.

Mamon Cudjo having died subsequently to the admission of Oklahoma into the union, the laws of descent and distribution in force in that state at the time of his death control the devolution of his estate. Jefferson v. Fink, 247 U. S. 288, 38 S. Ct. 516, 517, 62 L. Ed. 1117. This is conceded by counsel on both sides.

Subdivision 3, § 11301, C. O. S. 1921, in part, reads as follows:

"If there be no issue, nor husband, nor wife, nor father, nor mother, then in equal shares to the brothers and sisters of the decedent, and to the children of any deceased

brother or sister, by right of representation. * * * "

Section 11310, C. O. S. 1921, reads as follows:

"Kindred of the half-blood inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

Counsel for the appellant contend· that the allotment of Mamon Cudjo was an ancestral estate; that upon his death it descended in equal moieties to his maternal and paternal kindred; that, under the provisions of section 11310, supra, the maternal half brothers and half sisters, not being related by blood to Tena Cudjo, the mother of Mamon Cudjo, were excluded from inheriting the maternal moiety, and that the same passed to appellant.

On the other hand, counsel for appellees contend that the allotment of Mamon Cudjo did not come to him by descent, devise or gift of his ancestors and was, strictly speaking, not an ancestral estate but only an estate analogous to an ancestral estate and therefore not within the exception in section 11310, supra; and that, under subdivision 3 of section 11301, supra, it descended to the paternal half brothers and half sisters and the paternal niece, above named—the nearest blood kindred of Mamon Cudjo, under the Oklahoma Statute of descent and distribution.

The case of Hill v. Hill, 58 Okl. 707, 160 P. 1116, decided July 25, 1916, and the case of Gray v. Chapman, 114 Okl. 66, 243 P. 522; Id., 122 Okl. 130, 243 P. 522, decided January 19, 1926, fully sustain the contentions of appellant.

On the other hand, the more recent cases of In re Yahola's Heirship (Okl. Sup.) 285 P. 946, 948, decided January 14, 1930, and Bates v. Huddleston (Okl. Sup.) 293 P. 1047, decided May 9, 1930, fully sustain the contentions of appellees. In re Yahola's Heirship expressly overrules Hill v. Hill, supra, and Gray v. Chapman, supra, in so far as such cases hold that an individual allotment, under the law of descent and distribution of Oklahoma, should be cast as if it came to the individual allottee by descent. In that case, the court said:

"We think that, where property would be cast upon a member of a certain class save and except for a definite exception made by statute, it is necessary that the facts justifying such exception must be specific and certain and not be merely analogous thereto."

It follows that if the latest decisions of the Supreme Court of Oklahoma, holding that such an estate does not come within the exception in section 11310, supra, are binding on this court, the decree appealed from must be affirmed.

Counsel for appellant assert that the latest decisions of the Supreme Court of Oklahoma are not binding for two reasons: First, because the question is one of federal law and, second, because appellant's rights vested upon the death of Mamon Cudjo in 1917, at the time when Hill v. Hill supra and other decisions of the Supreme Court of Oklahoma construing the provision of the Arkansas statute similar to section 11310, supra, had become a rule property in Oklahoma.

In the case of Jefferson v. Fink, supra, the court said:

"By the Enabling Act of June 16, 1906, c. 3335, 34 Stat. 267, provision was made for admitting into the Union both the territory of Oklahoma and the Indian Territory as the state of Oklahoma. Each territory had a distinct body of local laws. Those in the Indian Territory, as we have seen, had been put in force there by Congress. Those in the territory of Oklahoma had been enacted by the territorial Legislature. Deeming it better that the new state should come into the Union with a body of laws applying with practical uniformity throughout the state, Congress provided in the Enabling Act (section 13) that 'the laws in force in the territory of Oklahoma, as far as applicable, shall extend over and apply to said state until changed by the Legislature thereof,' and also (section 21) that 'all laws in force in the territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said state, except as modified or changed by this act or by the Constitution of the state.' The people of the state, taking the same view, provided in their Constitution (article 25, § 2) that 'all laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law.'

"The state was admitted into the Union November 16, 1907; and thereupon the laws of the territory of Oklahoma relating to de-

scent and distribution (Rev. Stats. Okl. 1903, c. 86, art. 4) became laws of the state. Thereafter Congress, by the Act of May 27, 1908, c. 199, 35 Stat. 312, § 9, recognized and treated 'the laws of descent and distribution of the state of Oklahoma' as applicable to the lands allotted to members of the Five Civilized Tribes. * * *

"We have seen that Congress was accustomed to subjecting allotted Indian lands to the local laws of descent, and also that its action in putting the Arkansas law in force in the Indian Territory was intended to be merely provisional. With this in mind it seems very plain that the provisions before quoted from the Enabling Act were intended to result, at the time of the admission of the new state, in the substitution of the Oklahoma law of descent for that of Arkansas theretofore put in force in the Indian Territory. The recognition given to the Oklahoma law by Congress in the act of 1908 hardly can be explained on any other theory."

■ The question of the character of the estate involves a construction of the Seminole treaties and applicable Acts of Congress, and is solely one of federal law. The character of an allottee's estate, with reference to the question of whether it was ancestral or a new acquisition under the Arkansas statute, was first considered in Shulthis v. MacDougal (C. C. A. 8) 170 F. 529, and it was there held that it was neither ancestral nor a new acquisition, but an estate in the nature of, or analogous to, an ancestral estate. The principles laid down in Shulthis v. MacDougal, supra, have been accepted and uniformly followed by the national courts and the Supreme Court of Oklahoma. Pigeon v. Buck, 38 Okl. 101, 131 P. 1083; Id., 237 U. S. 386, 35 S. Ct. 608, 59 L. Ed. 1007; McDougal v. McKay, 43 Okl. 261, 142 P. 987; Id., 237 U. S. 372, 35 S. Ct. 605, 59 L. Ed. 1001.

■ In providing that the devolution of the estates of deceased Indians in Oklahoma, after the admission of Oklahoma into the Union, should be controlled by the statute of descent and distribution of that state, Congress did not adopt the Oklahoma statute of descent and distribution as a federal law to control the devolution of estates of deceased Indians but rather provided that the devolution of such estates should be in accordance with the local law. It is, therefore, our conclusion that the construction of the Oklahoma statute is solely a question of local law.

■ It is a general rule that the decision of the highest appellate court of a jurisdiction overruling a former decision is retrospective in its operation. In effect, it declares that the former decision never was the law. Nickoll v. Racine C. & S. Co., 194 Wis. 298, 216 N. W. 502, 504; Wilkinson v. Wallace, 192 N. C. 156, 134 S. E. 401, 402; Hoven v. McCarthy Bros. Co., 163 Minn. 339, 204 N. W. 29; Crigler v. Shepler, 79 Kan. 834, 101 P. 619, 23 L. R. A. (N. S.) 500; Haskett v. Maxey, 134 Ind. 182, 33 N. E. 358, 19 L. R. A. 379; 15 C. J. 960, § 358; 7 R. C. L. p. 1010, § 36.

■ There is a well settled exception to this general rule that, where contracts have been entered into or rights acquired upon the faith of a decision, they cannot be impaired by a change of construction made by a subsequent decision. Moore-Mansfield Co. v. Electrical I. Co., 234 U. S. 619, 623, 34 S. Ct. 941, 58 L. Ed. 1503; Douglass v. County of Pike, 101 U. S. 677, 687, 25 L. Ed. 968; Green County v. Conness, 109 U. S. 104, 3 S. Ct. 69, 27 L. Ed. 872; New Buffalo v. Cambria I. Co., 105 U. S. 73, 26 L. Ed. 1024; Nickoll v. Racine C. & S. Co., 194 Wis. 298, 216 N. W. 502, 504; Wilkinson v. Wallace, 192 N. C. 156, 134 S. E. 401, 402; Hoven v. McCarthy Bros. Co., 163 Minn. 339, 204 N. W. 29; 15 C. J. 960, § 358. See also Tidal Oil Co. v. Flanagan, 263 U. S. 444, 451–452, 44 S. Ct. 197, 68 L. Ed. 382.

■ The national courts will follow the interpretation of a state statute made by the highest judicial tribunal of the state, where no question of general or commercial law or violation of the Constitution or laws of the United States is involved. Stutsman County v. Wallace, 142 U. S. 293, 306, 12 S. Ct. 227, 35 L. Ed. 1018; Norton v. Shelby County, 118 U. S. 425, 439, 6 S. Ct. 1121, 30 L. Ed. 178; Hagar v. Reclamation Dist., 111 U. S. 701, 704, 4 S. Ct. 663, 28 L. Ed. 569; Illinois Cent. R. R. Co. v. Illinois, 163 U. S. 142, 152, 16 S. Ct. 1096, 41 L. Ed. 107; Nielsen v. Chicago, Bur. & Quincy R. R. Co. (C. C. A. 8) 187 F. 393, 396; Yocum v. Parker (C. C. A. 8) 134 F. 205, 211; McPherson v. Mississippi Valley T. Co. (C. C. A. 8) 122 F. 367, 373; Scott v. McNeal, 154 U. S. 34, 45, 14 S. Ct. 1108, 38 L. Ed. 896.

■ The construction, by the highest court of the state, of the statute of descent and distribution of such state, is binding upon the national courts. Byers v. McAuley, 149 U. S. 608, 621, 13 S. Ct. 906, 37 L. Ed. 867; Yocum v. Parker, supra; McPherson v. Mississippi V. T. Co., supra.

■ Where such decisions are in conflict, the national courts will follow the latest settled adjudications of the highest court of the state

rather than the earlier ones (St. L. & S. F. Ry. Co. v. Quinette (C. C. A. 8) 251 F. 773, 775, 776; Yocum v. Parker, supra; Bauserman v. Blunt, 147 U. S. 647, 13 S. Ct. 466, 37 L. Ed. 316; Green v. Neal, 31 U. S. (6 Pet.) 291, 297, 300, 8 L. Ed. 402; Lippincott v. Mitchell, 94 U. S. 767, 24 L. Ed. 315; Sioux Remedy Co. v. Cope, 235 U. S. 197, 201, 35 S. Ct. 57, 59 L. Ed. 193), excepting in cases where contracts have been theretofore entered into or rights or titles acquired on the faith of the earlier decisions. Moore-Mansfield Const. Co. v. Elec. I. Co., supra; Great Sou. Fireproof Hotel Co. v. Jones, 193 U. S. 532, 542–546, 24 S. Ct. 576, 48 L. Ed. 778; Douglass v. Pike County, supra; Gelpecke v. Dubuque, 1 Wall. 175, 17 L. Ed. 520; Thompson v. Lee County, 3 Wall. 327, 331, 18 L. Ed. 177; Burgess v. Seligman, 107 U. S. 20, 33, 2 S. Ct. 10, 27 L. Ed. 359; Fetzer v. Johnson (C. C. A.) 15 F.(2d) 145, 151; 25 C. J. p. 843, § 179.

Appellant has never been in possession of the land in question; he has neither contracted nor acted in reliance upon the earlier decisions of the Supreme Court of Oklahoma, with respect to this land; his alleged claim of title is not based upon a conveyance but upon operation of law. The case is therefore within the general rules and not within the exceptions above stated. Pearson v. Orcutt, 107 Kan. 305, 191 P. 286.

The Supreme Court of Oklahoma in Re Yahola's Heirship, supra, and Bates v. Huddleston, supra, accepted the construction of the national courts as to the character of the estate, but held that an estate of such character did not come within the exception in section 11310, supra. The United States District Court of the Eastern District of Oklahoma and this court are bound by such decisions.

The decree is therefore affirmed.